## Henry G. Ellsworth and others v. The City of Grand Rapids and Francis Cain.

*Highways: User: Statute construed: Dedication.* Under the statute (*Comp. L. 1857*, § *1079*) providing that "all roads not recorded, which have been used as public highways twenty years, or more, and all roads not recorded, which shall hereafter be used ten years or more, shall be deemed public highways," etc., the question of dedication is not involved; the right of the owner to dispute the public user is barred, so far as the prospective provisions of the statute are concerned, after the prescribed period of uninterrupted and undisturbed user, whatever the actual intention of the owner may have been.

*Highways: User: Platting lands.* The mere making and recording of a plat upon paper by the owner of the land, ignoring the existence of a road in actual use, is not such an interference with the public user of such road as to affect the limitation prescribed by the statute.

*Highways: User: Assessing taxes.* The fact that the public taxing officers have assessed taxes upon lots according to a plat so covering a road in actual use as that the lots lie partly within and partly without the space covered by the

road, does not estop the public or cut off their right to the use of the road; and especially not where such taxes do not appear to have been assessed prior to the expiration of the statute period making the public right absolute.

*Heard May 1.    Decided May 6.*

Appeal in Chancery from Kent Circuit.

*Thomas B. Church, M. J. Smiley* and *D. Darwin Hughes,* for complainants.

*J. W. Ransom* and *L. D. Norris,* for defendants.

CHRISTIANCY, CH. J.

The complainants are severally the owners in fee of several lots on the plat known as "Ellsworth's addition to the city of Grand Rapids," and filed their bill against the city and defendant Cain, as a contractor under the city, for a perpetual injunction to restrain them from grading and graveling a road or street, claimed by the city as a public highway, under the name of the "Grandville road;" across the lots of complainants, and from constructing therein gutters, cesspools, bridges and culverts ; complainants denying the existence of the highway over their lots, as claimed, and about to be graded and graveled by the city.

It is unnecessary to notice the pleadings further than to say that the bill alleges the platting of the land including the lots in question, by one Ellsworth, through whom complainants derive title, in the year 1857; that the city authorities have assessed taxes upon these lots as thus platted, for various city improvements, declaring them within certain taxing districts for this purpose, and thereby recognizing the plat; and complainants annex a plat of part of said "Ellsworth addition," showing the lots in question and the other adjoining lots with the projected streets laid down thereon, by which it appears that said plat was drawn without any reference to, or recognition of, said "Grandville road," which, if extended through said plat from Wealthy avenue on the south to Summit street (the only

portion coming in question in this case), as claimed, and about to be graded by the city, would cut diagonally through the lots in question, taking nearly all of some of the lots, cutting several of them into two pieces, and leaving most of them in a bad shape.

A road known as the "Grandville road," extending from the foot of Greenwich street, in the city of Grand Rapids, to Grandville, a distance of some six miles, is impliedly admitted by the bill to have been recorded as laid out many years before, which, if opened, would also extend diagonally through this plat; though it is claimed it was never opened and worked, and that it has been abandoned; and it is alleged that this recorded road, if extended and opened through this plat, would run across this plat more than its entire width west of this road as claimed by the city. And, while the bill alleges that the city claims there is a legal public road by user for more than twenty years, without objection from the owners of these lands where they are proceeding to grade across this plat, it denies the existence of any such highway by user, and alleges that the road, as thus claimed by user, has been abandoned by the city, so far as it would extend across this plat, and still farther into the city.

The answer, admitting the title of the complainants and the laying out of the plat by Ellsworth, alleges that at the time of the making and recording of the plat, so much of the said lots as is covered by the Grandville road (as claimed and about to be graded by the city) was under the control and protection of the city, as a highway, known as the "Grandville road;" and that the same was then open and used as a highway by the public, and had been in the open and notorious possession of the public as a highway for more than twenty consecutive years prior to that time; and that Ellsworth (who laid out the plat) extended it over and upon said highway, in his own wrong and without lawful authority; that at the time of the incorporation of the city (which was in 1850) the said road had been an

open and public highway known as the "Grandville road;" and that by the incorporation of the city, the care and supervision of said highway was committed to the city, so far as the same is within the city limits; and that the city has the power, and it is its duty, to protect and improve the same; admits that the officers of the city, before the filing of the bill, had assessed taxes on some of said lots across which said highway, as claimed by the city, runs, for the grading of Summit street; and that all said lots have been from time to time assessed by the supervisor of the first ward of the city for state, county and city taxes; but denies that this was done by the authority of the city, upon so much of said lots as lie within the boundaries of said road, and alleges that the officers making such assessments were misled by said plat and the wrongful act of Ellsworth in extending it over said road, without marking the road upon the plat.

The answer claims this as a highway, both by reason of its having been laid out by the township authorities in 1834, and recorded as such, prior to the incorporation of the city, and by uninterrupted user as such by the public; admits that the city is about to proceed to grade and gravel this road across these lots, and claims that it is the right and duty of the city to do so.

From the evidence it appears that in April, 1834, a record was made by the commissioners of highways of the township of Kent (then including what has since become the city), of a highway laid out by them, from the foot of Greenwich street (in the present city of Grand Rapids) to Grandville, a distance of six miles, forty-eight chains and twenty-eight links, what purports to be a survey thereof being incorporated in the record. But we are entirely satisfied, from the evidence, that this road, if run according to the courses and distances given in the record, would not, where it crosses the plat in question, coincide with the lines of the road as claimed by the city, or as it was at any time

opened and traveled; but that it would cross this plat more than its whole width west of the road as claimed by the city. But we are equally well satisfied that there was a mistake in the survey or in the recording it, and that the road, as it was actually laid out upon the ground at the time, corresponded substantially with the road as claimed by the city, and as subsequently opened, worked and traveled by the public.

The road, from the time it was thus laid out, down to the time of the commencement of this suit, has been one of the most important and most traveled roads leading into the city. The opening and. working of the road by the public authorities commenced almost immediately after it was laid out, and it has continued to be worked by the public ever since, and to be traveled as a highway on the line where the city now claims it to be; with this excep-. tion, that there was a hill near its junction with Summit street, and on a part of the ground now covered by the plat in question, where, for the distance of about twenty rods, the travel previous to 1845 or 1846 usually turned out some six or eight rods to the east to get around the hill, and then came back into the line of the road again. But in 1845 or 1846 the road was opened and graded straight through or over the hill, and the side way around the hill closed up; and ever since that time the travel has been where the road was, in fact, laid out upon the ground, and where the city now claims it to be. And from that time (and, in fact, from the time the road was first laid out) down to about the time of the commencement of this suit, neither the existence of the road as a legal highway across this land, nor the right of the public to travel and use it as such across this land, seems ever to have been disputed by the complainants or those through whom they claim, or by any one else. And, as it was in constant public use, and that use must have been known to the owners, and they made no objection to it, and raised no

question of the legality of the road, they must be taken to have acquiesced in such public user, and to have admitted the right of the public so to use it.

By *section 29, of chapter 25, of the Revised Statutes of 1846, (Comp. L. 1857,* § *1079),* which took effect March, 1847, it is enacted that, "All public highways now in use, heretofore laid out and allowed by any law of this state, or of the late territory of Michigan, of which a record shall have been made in the office of the clerk of the county or township; and all roads not recorded, which have been used as public highways twenty years, or more, and all roads not recorded, which shall hereafter be used ten years or more, shall be deemed public highways, but may be altered," etc. And by the act of March 15th, 1861 *(Comp. L. 1871,* § *1268),* the same provision is continued, with the single exception that ten years is inserted in the place of "twenty."

Now, unless the mere making and recording of a plat of this ground upon paper can be regarded as taking the case out of the statute from the time of such plat, it is quite immaterial whether the ten-year limitation, commencing with March, 1847, had elapsed when the platting took place; since it is clear that the same undisturbed public user continued from 1845 or 1846 down to about the time of the commencement of this suit, in 1870; and this user had continued ten years under the prospective provisions of the statute in March, 1857, and double that period in 1865 or 1866.

But it is urged by the counsel for complainants, that the question of a highway by user, under this statute, involves and includes the question of dedication; and that the way by user, therefore, cannot be established without proof of the intent of the owner to dedicate the land to such public use as a highway; that any thing occurring within the prescribed period, showing that the owner did not, in fact, so intend, will disprove the dedication; and that, in this view, the platting of the ground over which the road actu-

ally passed, by the owner, without recognizing or marking
the road upon the plat, disproves the intention to dedicate,
and thereby defeats the establishment of the road by user;
though such user has been constant and undisturbed for
the full statute period.   But this view would reduce the
question to one of dedication merely, in which no particu-
lar period of user is necessary, but which is to be decided
by the intent of the owner to dedicate, and the acceptance
of the dedication by the public.   No statute was needed
for such a purpose connected with roads of this kind, since
it would have been competent to show the intention to
dedicate, though the user had continued for a much shorter
period; and to require under this statute proof of an inten-
tion to dedicate, as a necessary element to establish a road
by user, would be not only to import into the statute an
element of which no intimation is found there, but com-
pletely to nullify the statute itself, and to defeat its mani-
fest purpose, which was, so far as its prospective provisions
are concerned, to bar the right of the owner to dispute the
rightfulness of the public user after the prescribed period,
in all cases where the user for that period had been unin-
terrupted and undisturbed, whatever the actual intention of
the owner might be.

The statute, in all such cases, is a fair notice to the
owner that if he means to dispute the rightfulness of the
public user, he must assert his right within the prescribed
period in some way calculated to interfere with, disturb or
interrupt such use by the public, or by the institution of a
suit for the judicial determination of the right.   The mere
making and recording of a plat upon paper, ignoring the
existence of the road, was not an act in any way calcu-
lated to interfere with, or disturb, the use of the way by the
public.   It offered no obstacle to travel, and neither per-
sons traveling the road, nor the public authorities having
charge of it, were bound to notice it.

Nor do we think the fact that the taxing officers of the
city have assessed taxes upon the lots according to the plat,

though such lots would lie partly within the space covered by this road, can be held to estop the public, or cut off their right to the use of the road; especially as it does not appear that any such taxes were assessed prior to the expiration of the statute period when the right of the public became absolute and that of the complainants was extinguished, whatever the effect of such taxation might have been, had it occurred prior to that period. But we do not mean to intimate that the effect would have been different in the latter case.

The decree of the circuit court granting a perpetual injunction must be reversed, and the bill dismissed, with costs of both courts to the defendants.

The other Justices concurred.