JAMES H. NYE v. TIMOTHY CLARK, ALVAH JONES AND BURTON A. STRONG.

*Highways—Closing in town-line road—Public and private roads.*

1. A bill in equity to establish rights in a roadway will lie against neighbors who seek to enclose it: damages give no adequate redress. And complainant may properly base his right upon a claim of private way as well as of a public way, if the public right turns out to be imperfect.

2. A road that has been used and recognized for twenty-one years and had previously been laid out, surveyed, fenced and worked by the highway commissioners as a town-line road, is properly treated as a public highway even though it has been allowed to grow up in brush outside of the actual roadway.

3. A decree recognizing a road as at least a private way when it was really public need not be disturbed if the parties are satisfied and the public authorities are not parties to the suit, as it cannot destroy any public rights.

4. The Constitution of 1850 did not abolish the then existing Highway Law beyond repealing the provisions for assessing damages in taking lands where the owners did not acquiesce.

Appeal from Branch. (Pealer, J.)   Jan. 7.—Jan. 14.

BILL to establish rights in highway. Defendants appeal. Affirmed.

*John B. Shipman* for complainant.

*L. T. N. Wilson* for defendants appellant. If the injury or grievance complained of can be adequately compensated by damages, or if the right claimed and the fact of its violation and invasion be not clearly and satisfactorily proven, a Court of Equity will deny an injunction and leave the party to his action at law :   2 Story Eq. Jur. (Redf. ed.) §§ 925, 926 ; Washb. Easements 575–7 ; High on Inj. §§ 885–7.

CAMPBELL, J.  Complainant filed his bill to establish his rights in a road in front of his premises, and to prevent obstructions and interference by defendants, who own property on the same road.  Defendants defended on the ground that no such rights exist.

Complainant owns eighty acres on the town line between Ovid and Kinderhook in Branch county, being the southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter of section 31 in town seven south of range six west which is Ovid. Strong owns land east of complainant in Ovid, and Clark and Jones own land in Kinderhook across the line.  These defendants are shown to have asserted and exercised the alleged right to enclose their premises up to the town line, and thus to destroy the passage-way.

If the roadway exists, there can be no doubt that defendants have so attempted to interfere with it, as to render them liable to equitable restraint. No action of damages could give adequate redress to a party who is hemmed in so as to have no peaceable egress from his own farm. And the suggestion that he may relieve himself by taking down the fences whenever he wishes to get through, if he has a right of way, does not commend itself to our judgment as likely to secure convenience, or to subserve the public peace. The remedy sought to put an end to continued aggression and dispute is the right one under such circumstances as appear here.

Objection is made, however, both that no right of way is made out, and also that the bill is uncertain and the decree unfounded. The court below established a right of way three rods wide along the town line as its central line, to be used by complainant as a private right of way, in common with the defendants. Complainant does not appeal. Defendants on the argument objected not only to the confirmation of complainant's right, but also to the establishing of a similar right in each of the defendants over his neighbor's land.

If this last ground is seriously taken it is obvious that if these defendants are all of a mind they can very readily get rid of this difficulty by mutual releases. But we do not think that there was any error in the decree in establishing this as a common way if such was its real character.

Neither is the bill objectionable in setting up the right of complainant as resting both on a claim of public way and on one of a private way if the public right turns out to be imperfect. His grievance is the interruption of his passage which may exist over what is supposed to be a highway, even where the road may not be strictly of that character, by reason of some failure to comply with all the requirements of law.

Complainant purchased his lands and went into possession in 1861. The fences set up by defendants were put there in 1882. During all that interval it is shown very conclusively

that complainant had claimed and used the way in question, and that there had been such action and recognition by the adjoining owners as would now bar their denial of it. But as defendants claim that such user was confined to a narrow wagon track, and has not always been on the same line, it becomes necessary to look further into the facts as to its extent.

It appears distinctly that in 1853 the commissioners of Ovid and Kinderhook laid out and surveyed a town-line road over these premises. There is proof that one, at least, of the adjoining land-owners was paid for his damages. But there is also proof that at a time not much later the lands along the line were fenced off so as to leave this strip— somewhat narrowed perhaps from the survey—of a substantially uniform width of about three rods; and that this fencing was meant as highway fencing.

It also appears that at various times work has been done to a greater or less extent by the highway officers or under their sanction. There is testimony that the land did not require much working to make it suitable for passage, and the fact that brush was allowed to grow upon so much as was not in the actual road-way could not destroy the public rights in the highway or any part of it. It must rest largely with the authorities to what extent they will clear out the space within the highway lines, and a road not much frequented would not warrant any great expenditure beyond what would make it passable. We think it quite clear from this record that this has been generally regarded by the authorities as a highway. Two of these defendants joined in a petition in 1882 to the commissioners of highways of the two townships, signed by a considerable number of other freeholders, recognizing this as a public highway and asking its conversion into a private way of less width. This petition, which seems to have been regular, was considered and denied by the commissioners. The name of the other defendant Clark also appears on this petition, but he denies that he signed it, and we do not think it important to examine into that fact. Clark's testimony itself

shows the long-continued use of the wagon-way, as well as of the road-side fencing.

In our opinion, the circuit judge might very properly have based his decree upon the existence of a public road. Such, in our view, would have been preferable to confining it to a private way. But, inasmuch as the pt b'ic authorities are not parties to this suit, the decree cannot destroy any public rights, and so far as complainant is concerned he appears to be satisfied with the decree as it stands. The decree is correct in treating the way as covering the space in width described ; inasmuch as it has been so bounded continuously by the acts of those concerned.

It was claimed on the argument that no rights could be set up out of the alleged public character of the way, because in 1853 there was no highway law in force, and reference is had to *People v. Kimball* 4 Mich. 95, where it was decided that the old law providing for the determination of damages by commissioners of highways was repealed by the Constitution which required such damages to be assessed in another way. But while it is stated rather broadly in that case that since the adoption of the new Constitution there had been no highway law, such was certainly not the understanding of the Court except as to that particular matter. For in the same term, in *Bumpus v. Miller* 4 Mich. 159, it was held this constitutional provision did not apply where land-owners acquiesced in the public dedication, and such is the common-sense deduction. There was nothing in the Constitution requiring new legislation beyond the taking of land not so acquiesced in. In the present case the land-owners acted on the idea that a road had been legally laid out, and adopted it by fencing and other unequivocal conduct. The decree does no injustice to defendants, and must be

Affirmed with costs.

The other Justices concurred.