VILLAGE OF MANCHESTER *v.* CLARKSON.

1. HIGHWAYS AND STREETS—PRESCRIPTION — EASEMENTS — PUBLIC ALLEY—QUESTION FOR JURY.

In an action by a village to recover a delinquent sewer tax, evidence of the use made of the alley, in which the sewer was laid, by the public for more than 15 years, and defendant's notice of said use, raised an issue as to whether said alley was a public way by prescription, under section 4307, 1 Comp. Laws 1915, which should have been submitted to the jury.[1]

[1] On public easement acquired by prescription, see note in 11 L. R. A. 55.

2. SAME — STATUTES — LIMITATION OF ACTIONS — PRESCRIPTION — NOTICE.

Such statute in all such cases is a fair notice to the owner that, if he means to dispute the rightfulness of the public use, he must assert his right within the prescribed period.

3. SAME—MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—EASEMENTS.

That public alleys involve easements in the nature of ways for the installation of water pipes, sewers, and other urban services for the general welfare, under municipal regulation, is well settled.

4. SAME—ACTION OF COUNSEL—ESTOPPEL.

Said village was not estopped, as a matter of law, from asserting rights acquired under said user, by the action of its attorney in attempting to obtain a right of way for the sewer from defendant and others.

5. SAME—PRESCRIPTION—NOTICE—DIRECTED VERDICT.

In view of the well-known rule that actual notice to the owner is not required, if the user is such that he ought to have known of it, the court was in error in directing a verdict for defendant.

6. SAME—PRESCRIPTION—SHAPE—CONTROLLING QUESTION.

The fact that the alley was crooked is immaterial, as it is the use made of it by the public, rather than its shape, which is controlling.

Error to Jackson; Parkinson, J.   Submitted October 17, 1916.   (Docket No. 166.)   Decided March 30, 1917.   Rehearing denied June 1, 1917.

Assumpsit in justice's court by the village of Manchester against Edgar B. Clarkson for the recovery of a delinquent sewer tax.  From a judgment for defendant, plaintiff appealed to the circuit court.  Judgment for defendant on a directed verdict.  Plaintiff brings error.  Reversed.

*A. J. Waters* (*F. M. Freeman*, of counsel), for appellant.

*A. F. Freeman*, for appellee.

STEERE, J.. This action was brought under section 2848, 1 Comp. Laws (1 Comp. Laws 1915, § 2721), to recover of defendant a delinquent tax of $46.55 imposed by special assessment upon two lots owned by him in block 22 of the village of Manchester as his proper proportion of the cost of a sewer which ran centrally through said block across his two lots conveniently back of business buildings located upon them.

Acting upon a petition of property owners in the district to be affected, the village council of Manchester in the year 1914 decided that the proposed sewer was a necessary public improvement, and instituted proceedings to construct the same under authority given by statute. To defray the cost a special assessment was levied on property in the block on the basis of resultant benefits. The various steps pointed out by statute for such proceedings appear to have been complied with and no serious question is raised as to them. Defendant's reasons for refusing to pay the tax assessed against him involve, as calling for consideration, but the one question of whether the assessment is void because the sewer was run across his private property without permission.

On an appeal by plaintiff from an adverse decision in justice's court the case was tried by jury in Jackson county. The trial court rightly held that the controlling issue was whether the sewer followed a public alley established by user, indicating during the progress of the trial that was an issue of fact for the jury, but at conclusion of the testimony finally held as a matter of law plaintiff's testimony failed to raise an issue of fact upon that question, and directed a verdict for defendant. The substance of plaintiff's assignment of errors is that the evidence squarely raised a controlling issue of fact, in deciding which the court invaded the province of the jury.

Block 22 of the village of Manchester is located centrally in the business district, extending east and west on the north side of the principal business thoroughfare, known as Exchange Place street. Its front on that street is fully occupied with buildings devoted to business, including a hotel, bank, post office, stores, shops, etc. The block is said to be ten rods wide, and is apparently about three times as long, although no scale is furnished with the plat found in the record. It is otherwise bounded on the east end by the Raisin river, over which is a bridge on Exchange Place street, on the north side by a back street called Madison, apparently ending at the river, and on the west end by Clinton street. The buildings fronting on Exchange Place are said to be from 60 to 80 feet deep, back of which, towards Madison street, the block is mostly unoccupied, there being, however, scattered over it a few outbuildings in the nature of storehouses, sheds, icehouses, barns, etc. It is conceded that no alley through this block was provided in the platting or ever formally laid out and dedicated by the owners, but it is shown practically without dispute that for many years a well-defined passage, or driveway, has extended into the property connecting with Madison street at each end, but running centrally of the block east and west in the rear of a majority of the business places which front on Exchange Place, including defendant's property. The sewer in question followed the east and west line of this driveway where it crossed defendant's property, and it is claimed on behalf of plaintiff that by long-continued and undisturbed public use, coupled with assumption of control over it and expenditure of public money in its maintenance by the village authorities, an implied dedication and acceptance of it as a public alley or thoroughfare arose.

To support this contention plaintiff produced witnesses who testified that a plainly defined alley, or

roadway, in common and public use had existed for many years extending centrally east and west through that portion of block 22 where the sewer crossed defendant's lots, used by all who had occasion without objection from any one, generally known and understood to be a public alley or passageway, and that the street commissioner under authority of the city council had frequently improved and repaired it at public expense, openly and notoriously, for more than 15 years prior to the time of constructing a sewer along the portion of it running east and west directly back of defendant's and other buildings. Witnesses testified that the "same beaten path" had been used for over 15 years, "a driveway up there the same as an alley."

"The village has repaired that alley a good many times right where it crosses Mr. Clarkson's premises."

"I know of its having been used since about 1889 or 1890."

"Any one that went on the premises or near the premises could clearly see there was a roadway maintained by somebody. It shows somebody is keeping it up."

"Practically every year since 1890 work has been applied there by the street commissioner. I remember of one time putting on what is known as a horse road scraper and going up in there the whole distance."

An old resident who had been in business there for many years, and had at times been a member of the village council, testified that this alley or driveway had been used generally for 30 years by everybody who had occasion to; that, while his place of business was across the river, he had himself used it every year until the last; that before he was on the council it had been "customary for the village to maintain that alley and keep it up." This witness further said in part:

"Along the rear lines of stores I should think the width was perhaps 20 feet.  *  *  *  There has been

work done there.   Because I was chairman of the
street committee of the village I know it has been
directed by the council, gravel drawn in, and I think at
different times there was ashes drawn in.   At one time
we graded that all up through there in pretty good
shape.   At this particular time I think they only
drawed gravel.   *   *   *   I could not tell the dates;
it was when I was on the council some ten years ago.
*   *   *.   It was done in the daytime.   Everybody saw
it and everybody thought it was a good job.   *   *   *
There was a track there.   It was a straight line until
you got to the curve.   *   *   *   When I was a village
official, it would be necessary to repair that for the
safety of the public.   *   *   *   The council thought
it was necessary to fix it, and went on and done some
work there to my knowledge, when I was on the street
committee and chairman of that committee.   *   *   *
I supposed it was a public alley belonging to the vil-
lage.   *   *   *   There was nobody to my knowledge
except the village keeping that alley or driveway in
repair."

This line of testimony, standing alone, would seem
to at least raise an issue of fact upon plaintiff's claim
that a prescriptive easement of public travel over this
way was established by user and public improvement
of it years before the sewer was laid along it.   Section
4061, 2 Comp. Laws (1 Comp. Laws 1915, § 4307),
provides in part:

"All roads that shall have been used as such for
ten years or more, whether any record or other proof
exists that they were ever established as highways
or not,   *   *   *   shall be deemed public highways."

Of this it was said in *Ellsworth* v. *City of Grand
Rapids*, 27 Mich. 250:

"The statute in all such cases is a fair notice to the
owner that, if he means to dispute the rightfulness
of the public user, he must assert his right within the
prescribed period in some way calculated to interfere
with, disturb, or interrupt such use by the public, or
by the institution of a suit for the judicial determina-
tion of the right."

In *Campau* v. *City of Detroit,* 104 Mich. 560 (62 N. W. 718), this court said:

"We consider the statute one of repose, and the effect of user of land as a highway by the public is not dependent upon extrinsic evidence which might tend to show that, while the user implied a dedication, in fact none was made. The question is sufficiently discussed in the following cases: *Bumpus* v. *Miller,* 4 Mich. 159; *City of Detroit* v. *Railroad Co.,* 23 Mich. 173; *Ellsworth* v. *Grand Rapids,* 27 Mich. 255; *Nye* v. *Clark,* 55 Mich. 603 [22 N. W. 57]; *Coleman* v. *Railroad Co.,* 64 Mich. 164 [31 N. W. 47]; *Kruger* v. *Le Blanc,* 70 Mich. 76 [37 N. W. 880]; *Adams* v. *Iron Cliffs Co.,* 78 Mich. 283 [44 N. W. 270, 18 Am. St. Rep. 441]."

The vexed question of distinction between a street, road, and alley, which sometimes becomes of more or less importance in the decision of a case, is immaterial here. The issue before us involves only plaintiff's right to put in a public sewer along this claimed alley. That public alleys involve easements in the nature of ways for the installation of water pipes, sewers, and other urban services for the general welfare under municipal regulation is well settled. In 2 Corpus Juris, p. 1151, it is said that the word "alley," "when not qualified by the term 'private,' is conventionally understood in its relation to towns or cities" to mean "a narrow street in common use," and in *Leete* v. *Roney,* 127 Mich. 92 (86 N. W. 519), the statutory period of limitation was held applicable to an alley.

Section 2775, 1 Comp. Laws (1 Comp. Laws 1915, § 2646), gives a village council supervision and control of all public highways, streets, alleys, etc., within the village, with like authority over the same as is given by the general laws of the State.

Defendant contended, and the trial court held, that, whatever user was shown, the attending circumstances negatived any implication of presumed dedication and

acceptance, for the reason that the north portion of block 22, at the rear of the business buildings which faced on Exchange Place, was mostly unoccupied, open to the public, and in effect a common, because of crookedness of the traveled track claimed to be an alley and defendant's lack of knowledge or acquiescence in its use, and the further fact that shortly before the sewer was built the then village attorney sought to and did obtain from most of the owners of property across which the sewer ran their signatures to a writing granting the village a right of way, which defendant declined to sign.   Of his refusal defendant testified:

"He [the village attorney] said he would take proceedings to condemn it.  He merely said they were going to put the sewer there, and he came to get me to sign that paper, and I wouldn't sign it, and he said he would force me to, or would take proceedings to build the sewer without my signing it, and I says, 'That is your pleasure.' "

In directing a verdict the trial court laid stress upon the attempt of plaintiff's attorney to obtain a right of way for the sewer from defendant and others, emphasizing it as a conclusive admission that no public alley existed there which operated as a matter of law to estop plaintiff from subsequently so claiming.  It appears that in its course to the river the sewer also ran through land in block 22 not traversed by the claimed alley, but, taken at its strongest, the securing or attempt to secure a release was only evidence bearing upon a disputed question of fact, and did not as a legal proposition conclude the village from acting on and asserting rights already acquired.  While very proper evidence for a jury to consider as tending to show that previous user was not under any claim of right, if the right of way had at that time actually been established by long-continued adverse use of and public improvements upon it, such right would not be divested by the fact of plaintiff's applying for and

obtaining a license to use it. *Tracy* v. *Atherton,* 36
Vt. 503. In finding and holding as legal ground for
directing a verdict that defendant never consented to,
acquiesced in, or knew of any public user or improve-
ments upon this alley, the court invaded the province
of the jury in deciding issuable facts. It is true that
defendant testified that he had lived in Jackson for
many years, and had no knowledge of the claimed user
or of any facts tending to establish this alley, or that
the sewer had been built and one of his stores con-
nected with it until this suit was brought, but he also
testified that he visited Manchester about once a year
on an average looking after this property, upon which
he made repairs and improvements, when necessary,
either attending to them personally or directing others
to do so. Of an occasion when he rented a store which
had been vacant for a time and fixed it up for his
tenant, he testified:

"After that when any question of repairs of the
approach to this so-called roadway in the rear of my
building would come up I would either do it myself
or have it done."

If, as plaintiff's witnesses testified, this so-called
roadway, the approach to which he repaired, was a
well-defined, improved, and regularly traveled drive-
way, such as any one could clearly see was "main-
tained by somebody," extending along the block in a
direct line conveniently at the rear of the business
buildings, not only across his property, but that of
others on each side, and eventually leading into one
of the streets surrounding the block, the extent of his
knowledge and acquiescence was clearly an issue of
fact. The village clerk testified that he sent notice
of the proposed sewer to defendant by registered mail,
which the latter denied receiving. It is also shown
that statutory notice of reviewing the special assess-
ment was published in a local paper, which is the only

notice required and which in law operated as a sufficient notice to all parties in interest.

Although a proper subject of inquiry in an issue of this nature, whether defendant had actual knowledge of what was going on in connection with this roadway is not a controlling factor. In *Bird* v. *Stark,* 66 Mich. 654, 656 (33 N. W. 754), this court said:

"We do not think that actual knowledge of the adverse holding is required when the circumstances are such that the contiguous holder ought to have known it."

And in *Chabert* v. *Russell,* 109 Mich. 571, 574 (67 N. W. 902), the following instruction to a jury was approved:

"In order to constitute adverse possession, the acts of possession on the land claimed to constitute the adverse possession must be such as, if seen by plaintiff, would clearly apprise him that the party doing the acts claimed the ownership of the property."

The rule upon this proposition is stated in 14 Cyc. p. 1148, as follows:

"The enjoyment must be of such a character that an ordinary owner of land diligent in the protection of his interests would have, or must be taken to have, a reasonable opportunity of becoming aware of that enjoyment."

In denying plaintiff's motion for a new trial the court stated as a controlling reason "because the shape itself indicates to me that the property owners never supposed the public were taking that, or it was becoming a public way and that the village itself never supposed that," in that connection stating, in substance, that it appeared to the court in its ramifications more like an intestinal thoroughfare "inside of an abdomen * * * than it did like a roadway or alley." It, however, impressed defendant's counsel as "The Path the Calf Made," under which title an elucidating poem

of several stanzas is quoted in his brief, supplemented by a quotation from the prophet Isaiah touching those who make crooked paths and what will befall whosoever goeth therein. As these are the only authorities cited in counsel's brief and reply brief, they have been considered with care. We are also advised how it appeared to counsel for plaintiff, but how it impressed the jurymen who sat in the case to decide the material issues of fact is not disclosed.

According to plaintiff's evidence and the plat found in this record, the alley runs in a straight line lengthwise of the block for approximately half its length, crossing at right angles the property of defendant and other owners on either side. The sewer, which runs in a direct line east to the river, follows that portion of the alley running straight east and west. But in any aspect of the case the controlling question is the public use which has been made of this alley, rather than its shape. In *Campau* v. *City of Detroit, supra,* where it was contended, as here, that the "crookedness of the traveled track," with other facts shown, overcame as a matter of law any presumption of dedication that might otherwise arise from uninterrupted use, the case was submitted to a jury, and an adverse verdict to such contention sustained. The extent to which any shown irregularities in its course militated against plaintiff's contention that it was commonly recognized, traveled, used, and improved, according to surroundings, population, public convenience, and business necessities, in the same manner and to the same extent as if originally laid out by statute, was only an element in the case for the jury to consider in deciding the ultimate issue of fact.

For the foregoing reasons the judgment is reversed, with costs, and a new trial granted.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. PERSON, J., did not sit.