## McMORRAN MILLING CO. *v.* PERE MARQUETTE RAILWAY CO.

1. Easements—Abandonment—Equity — Jurisdiction — Injunction.

    Where the creation of an easement by deed is not denied by defendant, but the claim is made that it has been abandoned by plaintiff, equity is the proper forum to establish or confirm a right of way.

2. Same—Ejectment Will Not Lie to Recover an Easement.

    While the only action at law that would give a party possession, or a right to the possession, of real estate, is ejectment, it has been *held*, that in this State ejectment will not lie to recover an easement.

3. Same—Continuing Trespass—Right to Writ of Injunction.

    A party need not submit to an invasion of his rights and content himself with suing for damages, but he has a right to have the continuing trespass stopped by an injunction.

4. Same—Abandonment—Evidence—Sufficiency.

    Evidence *held*, sufficient to sustain the conclusion of the court below that plaintiff had not abandoned the easement.

5. Same—Nonuser Not an Abandonment.

    Mere nonuser of an easement, without a clear intent to abandon, does not amount to an abandonment; nor will nonuser for a less time than that required by the statute of limitations give rise to a presumption of abandonment.

6. Same—Injunction—Laches.

    Where it appears, in a suit by the owner of land to restrain defendant railroad company from obstructing a street crossing to which plaintiff had an easement by deed, giving it ingress and egress to and from its land, that plaintiff stood by and saw the crossing closed, contenting itself with merely protesting against the same, that it has been closed for from nine to twelve years, and in the meantime defendant has incorporated it in its yard, and made many important and expensive changes which it would be costly to abandon, and that the public safety and in-

terest would suffer by reason of the amount of freight shipped over said point if said crossing were re-established, and that the damages to defendant would be grossly disproportionate to any benefit which could accrue to plaintiff, who has access through another street less than 300 feet away, *held*, that plaintiff has lost its right to the gracious writ of injunction by its inaction, and the case will be remanded to the court below with direction to determine the amount of plaintiff's damages and to enter a decree for same.

Appeal from St. Clair; Tappan (Harvey), J. Submitted January 6, 1920. (Docket No. 15.) Decided June 7, 1920. Rehearing denied July 20, 1920.

Bill by the McMorran Milling Company against the Pere Marquette Railway Company to enjoin the obstruction of certain easements. From a decree for plaintiff, defendant appeals. Modified, and affirmed.

*Walsh & Walsh,* for plaintiff.

*Shields, Merriam & Sleeper (Lincoln Avery,* of counsel), for defendant.

STONE, J. The bill of complaint herein was filed in January, 1918, to restrain the defendant from obstructing two alleged easements of right of way over the easterly end of Court and Water streets, in the city of Port Huron, leading to plaintiff's property, and praying that defendant be required to maintain and keep clear such crossings, so that plaintiff may have ingress and egress to its property lying east of defendant's premises. The court below granted relief to plaintiff as to Court street, and defendant has appealed. The plaintiff has not appealed.

The easement in litigation was reserved in a deed executed June 1, 1885, by former owners of the plaintiff's property, conveying to the Port Huron & North Western Railway Company of Michigan, through

whom the defendant acquired title, property now comprising that part of the yard through which a crossing is desired.   The pertinent portion of the deed is as follows:

"But subject to the conditions and reservations hereafter mentioned.   The condition is that said party of the second part, its successors and assigns, shall provide, keep and maintain suitable and convenient crossings of all railway tracks in the line of Court street and Water street, as shown by said plat, for the purpose of ingress and egress to and from the mill property of McMorran & Co. and for business property on St. Clair and Black rivers, and the reservations are of the right of said parties of the first part, their heirs, executors, administrators, and assigns, at all times, to cross said land and tracks, and in the event of neglect or failure of said second party, its successors and assigns, to provide, keep and maintain said crossings, the right to provide, keep and maintain the same, charging to and collecting from the said party of the second part, its successors and assigns, the expense thereof; also any and all legal rights in the premises resulting from non-fulfillment of the conditions aforesaid by said party of the second part, its successors and assigns."

The property of the plaintiff to which this easement was reserved as appurtenant, consists of a two-acre tract of land bounded upon the north and east by the Black and St. Clair rivers, respectively, and upon the south and west by the yard of the defendant.

The property of the plaintiff comprises lots A, 39, 40 and B, of the Harrington plat of the city of Port Huron.   A map of the property of the plaintiff entitled "Map for Henry McMorran" introduced as plaintiff's exhibit "C" is appended hereto.   That portion of the yard lying west of the plaintiff's property is the land which was conveyed to the Port Huron & North Western Railway Company by the deed above referred to, and across which the easement in question is claimed. At the time of the conveyance to the railway com-

pany, a flour mill, pea mill and elevator were located upon the plaintiff's property. These buildings were

destroyed by fire in 1900, and have never been re-built. A small gravel dump has been maintained at the northern end of the property since 1906 or 1907 by the plaintiff and present owner. Two sheds were constructed for use in this gravel business. Most of the gravel which has been sold has been removed by rail, only a small quantity having been taken out by teams. The amount of gravel which has been sold has been so small that the plaintiff has not derived any profit from this business. In fact, as was testified to by plaintiff's witnesses, no business enterprise of any importance has been conducted upon the plaintiff's property since the destruction of the mills and elevator in 1900.

The yard of the defendant consists of a main track and numerous sidings extending in a northerly and southerly direction, as they appear on said map. The sidings are connected with the main line by two "lead tracks" extending diagonally across the northerly and southerly ends of the sidings. The northerly of these two "lead tracks" extends easterly past the sidings to the car ferry slip on the bank of the St. Clair river. The whole yard thus formed is about a half mile long and about 400 feet wide.

The entire yard, together with all the other property and assets of the Port Huron & North Western Railway Company, were conveyed to the Flint & Pere Marquette Railroad Company in 1889, which in turn conveyed to the Pere Marquette Railroad Company ten years later. In 1907 the latter corporation conveyed to a new corporation bearing the same name. The defendant and present owner acquired the property in 1917 at a mortgage foreclosure sale of the assets of the Pere Marquette Railroad Company. The tracks above described constitute the only yard of the defendant in Port Huron. All freight transported from this section of the State, or any points in the

State north and west of this locality to eastern points, or any of the local industries situated around Port Huron, and *vice versa*, passes through this yard. Trains containing cars moving to or from eastern points have to be broken up in this yard when taken on or off the ferry. Trains for movement within the State also are assembled and broken up here. About two-thirds of this freight consists of traffic with the east, and about one-third of local shipments. It should be borne in mind that this statement is made from testimony taken in September, 1918, and in "war times." The amount of traffic moving through the yard has greatly increased during recent years, and the number of cars handled has doubled since 1906. There was testimony that at that time the yard was too small for handling the amount of traffic moving through it. In addition to the freight moving through the Port Huron yard, all passenger trains running between that city and other points on defendant's line pass through, and are made up in this yard. The passenger station is located on the westerly side of the main track in the northerly end of the yard, as indicated in the annexed map. This depot was built in 1913 or 1914, the old passenger station, which was located south of Court street, having burned. At the time the new station was built a brick platform was constructed extending from the station in a southerly direction, parallel to the main track, for a distance of about 250 feet. We have to deal primarily with the Court street crossing. By its amended answer, filed before the hearing and authorized by a *nunc pro tunc* order (and the testimony in support of which was not objected to), the defendant, among other things, admitted the allegation of the bill that it had left its cars standing across Court street for long periods of time, and had used its said tracks at what was formerly the crossing of Court street as a place for shunt-

ing its cars back and forth, whereby the plaintiff was deprived of any ingress and egress from its said property by means of what was formerly Court street; that defendant and its predecessors in title had so operated its said tracks at the intersection of what was formerly Court street for the shunting, switching and storage of cars as aforesaid with the full knowledge of the plaintiff ever since 1903; that in 1903, all crossing boards, planks and crossing signs, etc., were removed from said crossing and that plaintiff, and its agents and representatives, and predecessors in title knew of the removal of said planks and crossing boards and signs, etc., at the time they were removed, yet neither the plaintiff nor its representatives or predecessors in title made any objection whatsoever to such removal; that ever since said crossing was so closed in 1903, defendant, and its predecessors in title, have openly and notoriously, and in defiance of any right the plaintiff may have had to cross said tracks, at the said crossing, used the said tracks formerly intersected by Court street, for the shunting, switching and storage of cars and locomotives, and the passage of trains, with the full knowledge of the plaintiff, and its agents and representatives and predecessors in title; that whatever crossing formerly existed at Court street has been continuously and permanently closed since 1903, and has been at all times since 1903 impassable to traffic of any sort, because of its use as aforesaid, by this defendant and its predecessors in title, with the full knowledge of the plaintiff, and its agents, representatives and predecessors in title; that at the time said crossing at Court street was closed, neither the plaintiff nor its agents, nor representatives, nor predecessors in title made any complaint, or offered any objection whatsoever to the closing of said crossing, and that no objection to the continuous obstruction of said crossing had been

made prior to the time this bill was filed; and that the opening of said crossing at Court street, as is prayed in this bill would involve a great amount of labor, and the expenditure of large sums of money for the reconstruction of proper pavement, roadway, planking, etc.

The defendant offered testimony tending to support said claim, and it claims that the testimony fixes the date at which said Court street was first obstructed as not later than 1905 or 1906, and also claims that very little use was made of the crossing before that time. It is very apparent that the brick platform which was constructed when the new station was built, being directly across the line of Court street, also rendered the use of such crossing impossible. All traffic since the closing of Court street has been carried on by way of Water street, the two crossings being about 250 or 300 feet apart. The defendant contended below, and contends here:

(1) That the plaintiff is not entitled to an injunction restraining the defendant from obstructing the alleged crossing at Court street because the existence of that easement is in dispute, and has not been established by an action at law.

(2) If the questions involved in the determination of the right of the plaintiff to an easement were cognizable in a court of equity, the evidence introduced in this case would impel a finding that easement has been lost by abandonment.

(3) Even if the existence of the easement claimed by plaintiff were not disputed, the plaintiff has lost any right that it originally may have had to equitable relief by laches.

(4) Regardless of what the equities of the case may be as between the plaintiff and defendant, the great injury which would be occasioned to the public interests from the granting of an injunction would be so grossly disproportionate to any benefit which would accrue to the plaintiff, that equitable relief should be withheld.

The learned circuit judge filed an opinion in the nature of a finding, and after having stated the date of the burning of the mills and elevator, he referred to the fact (which we have not alluded to because not embraced in the pleadings) that the Pere Marquette officials tore out and removed the industrial track that plaintiff had constructed on its property known as lots A, 39, 40 and B, and that this line extended from the Grand Trunk Railway track north to the mills and elevator of the plaintiff. He then refers to the fact that the removal of this track resulted in a long controversy between the parties concerning the replacing of the track and the blocking of Court and Water streets. The defendant company finally replaced the track some two or three years before the hearing, but did not connect with the Grand Trunk Railway, but only with its own line. In order to reach the Grand Trunk Railway plaintiff is obliged to pay switching charges.

There is no question that the discontinuance of traffic by the White Star Line steamers reduced the traffic very materially at Court street.

The trial judge referred, in his findings, to the fact that the evidence showed that when the various tracks were originally put in across Court street the railroad company put in a plank crossing on each track; that after the White Star Line discontinued operations, this plank crossing across Court street was gradually removed by the railroad company, the circuit judge finding that the last removal was in 1914, although most of it had been removed before that date. The conclusions reached by the circuit judge were in substance as follows:

"1. Jurisdiction of the Court.

"It is my conclusion that a court of equity has jurisdiction to hear and determine the issues raised in this cause. It is undisputed that plaintiff reserved an easement of ingress and egress to and from their remain-

ing lands as specified in exhibit B. The undisputed testimony of Mr. McMorran is to the effect that he continued to protest to the officials of the Pere Marquette Railway against the removal of the plaintiff's industrial track and also against the closing of the streets in question. It is also undisputed that in 1906 or 1907, Mr. McMorran, acting for plaintiff, discussed the matter of the railway company tearing up plaintiff's industrial track and blocking Court street and Water street."

The court then quotes certain testimony of Mr. McMorran relating to an interview with Mr. Trump, the superintendent of the railroad company, and adds:

"After Superintendent Trump's agreement in 1906 or 1907 to give plaintiff free access to and from Court street and Water street, by remedying the team question until the matter could be adjusted later, the officials of the railroad company let the controversy drag along until five or six years ago, 1912 or 1913, when they replaced the track they removed, but failed to adjust the crossing question. It also appears in proof that no official of the road has at any time before this suit was instituted made any claim that plaintiff had lost or abandoned their easement in question.

"The legal question as to jurisdiction is this: Plaintiff's easement is a part consideration for defendant's title to the land in the street crossing. Upon controversy as to defendant's trespasses upon plaintiff's rights therein, defendant agrees to adjust the matter at a later date, not fixed. They also assure plaintiff that they have no intention to and do not want to deprive plaintiff of the easement reserved. Six years after this agreement and assurance defendant settles a portion of the disputed matter by replacing the plaintiff's industrial line, but continues to block the streets without either adjusting the dispute or advising plaintiff that they did not intend to do so.

"Is plaintiff's failure to further claim or enforce his rights evidence of abandonment? Does such evidence of abandonment tend to establish title to the street crossing in defendant, freed from the easement, thus making the question one of fact for a jury in an action at law? It is my conclusion that these questions

must be answered in the negative. Defendant cannot by means of such promises and assurances hold possession and continue trespasses to establish or raise a question of title. The matter involved is one of repeated and continued trespass that cannot be adequately adjusted in an action at law.

"2. Abandonment by Plaintiff.

"Upon the question of abandonment of the easement in question by plaintiff, the character and location of the property involved has an important bearing. Its frontage on St. Clair river affords the benefits of deep water navigation to upper and lower lake ports. The frontage on Black river affords extensive dock facilities. Two principal roads afford transportation directly to and from the property. With suitable street approaches as provided for in plaintiff's exhibit B, there can be no doubt that the property is very valuable for factory or shipping purposes.

"The undisputed testimony of Mr. McMorran is to the effect that it is worth $35,000 with the streets open, and about half that amount with Court street closed to traffic. While it may be doubted that with Water street open the closing of Court street would reduce the value of the property one-half, there can be no doubt that it will be much more available for factory or shipping purposes with that approach opened.

"With these facts in view it is incredible that the plaintiff, or Mr. McMorran acting for it, has at any time intended to abandon its rights to reach its property over Water street and Court street as provided in the deed referred to. It is my conclusion that there is no proof of intention to abandon, and no abandonment of easement as contended for by defendant.    *    *    *

"3. Water Street.

"It is my conclusion that the proofs do not warrant action by the court to control the operation of defendant's trains, cars or locomotives at Water street. The evidence indicates that traffic at that point has not been unreasonably delayed for a considerable time prior to the hearing of this cause."

A careful consideration of this record satisfies us

that the holdings of the court below upon the subjects of jurisdiction of the court, the claimed abandonment by the plaintiff, and the disposition of the case with reference to Water street, are fully justified by the evidence in the case. We express no opinion as to the value of the premises of the plaintiff, nor to the injury occasioned thereto by the closing of Court street.

The trial court held that it was the duty of the defendant to provide for and keep open a passage over its tracks at Court street, and accordingly enjoined the defendant from obstructing the Court street crossing, allowing the defendant one year to comply with the decree to avoid interrupting the traffic of the defendant in the transporting of munitions and materials used for war purposes. It is that portion of the decree requiring the defendant to reopen the crossing through its property at the foot of Court street which is complained of by the appellant in this case.

As no cross appeal was filed by the plaintiff, the propriety of the findings of fact and law made by the trial court relative to Water street need not be considered. *Proctor* v. *Robinson*, 35 Mich. 284; *Herpel* v. *Herpel*, 162 Mich. 606.

1. Is the existence of the easement so in dispute that it must first be established by an action at law? We think not. It will be noted that the creation of the easement by deed, in the first instance, is not denied. What is really claimed by the defendant is, that the easement has been abandoned. We are of the opinion that it has been settled in this State that a court of equity is the proper forum to establish or confirm a right of way. *Nye* v. *Clark*, 55 Mich. 599; *Lathrop* v. *Elsner*, 93 Mich. 599 and cases there cited; *Murphy Chair Co.* v. *Radiator Co.*, 172 Mich. 14; *Berkey & Gay Furniture Co.* v. *Milling Co.*, 194 Mich. 234; *Grinnell Bros.* v. *Brown*, 205 Mich. 134.

In the *Grinnell Case* Justice Fellows, speaking for this court, said:

"The plaintiff as vendee in this land contract had such an interest in the premises as justified the filing of this bill. Its rights under the contract would be invaded by the erection of the structure originally contemplated and planned for. To prevent this invasion of its rights, it chose the proper forum."

The only action at law that would give a party possession of real estate, or a right to the possession of real estate, is ejectment. But it has been held that in this State ejectment will not lie to recover an easement. *Taylor* v. *Gladwin,* 40 Mich. 232; *City of Detroit* v. *Railway,* 172 Mich. 136, 148, and cases cited; *Graham* v. *City of Detroit,* 174 Mich. 538 (44 L. R. A. [N. S.] 836); see cases cited at page 542.

If it is claimed that plaintiff should have brought an action of trespass, it should be borne in mind that we have held that a party need not submit to an invasion of his rights and content himself with suing for damages. He has a right to have the continuing trespass stopped by an injunction. *Hall* v. *Nester,* 122 Mich. 141; *Rhoades* v. *McNamara,* 135 Mich. 644, and cases cited on page 645.

2. Has plaintiff abandoned the easement? We think not under the evidence in this case. We have examined more than a score of cases cited by counsel, and are of the opinion that the court below was right in its conclusion upon this subject. Certainly mere nonuser does not amount to an abandonment in such a case. *Day* v. *Walden,* 46 Mich. 575; *Lathrop* v. *Elsner, supra; Murphy Chair Co.* v. *Radiator Co., supra.*

There must be a clear intent to abandon. Nonuser for a less time than that required by the statute of limitations is no presumption of an abandonment. *Jones* v. *Van Bochove,* 103 Mich. 98. There must be some act on the part of the dominant owner clearly

indicating an intention to give up and abandon the easement. By the clear weight of authority the better doctrine seems to be that mere nonuser of a way, arising either by prescription or grant, for a period short of the statute of limitations, will not extinguish the easement, unless accompanied by an intention on the part of the dominant owner to abandon it. See collection of authorities in note to *Trimble* v. *King,* 22 L. R. A. (N. S.) 880 (131 Ky. 1, 114 S. W. 317).

3, 4. The third and fourth propositions of the defendant may be considered together. The evidence is in conflict as to whether complaint or objection had been made by plaintiff to the closing of Court street. That it has been closed from nine to twelve years cannot be denied. At most all that can be claimed by plaintiff is that there was a mere protest on its part. In the meantime a new passenger station has been constructed upon the northerly line of Court street, and a brick platform built directly across the easement. The volume of freight carried through this yard has practically doubled since the crossing was first closed. The reopening of Court street would greatly reduce the number of cars which could be switched through the yard, and the expense of operating the business of defendant would be greatly increased. With Water street open—less than 300 feet away, Should an injunction be granted as to Court street under all the circumstances of the case, as they appear in evidence? With the numerous tracks in the yard, Court street, if opened, would be a dangerous crossing at best. The public safety and the public interest in such a case should be considered.

Has plaintiff lost its right to the gracious writ of injunction by its inaction since the closing of Court street? We think there is much force in the claim of defendant that the granting of an injunction would be grossly disproportionate in damages to defendant

to any benefit which could accrue to the plaintiff. The following language taken from 14 Ruling Case Law, Title "Injunctions," § 64, p. 363, is pertinent here:

"There is no hard and fast rule as to what constitutes laches, which has been defined as an inexcusable delay in asserting a right. Generally if there has been unreasonable delay in asserting claims, or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is asked."

We quote the following language of the supreme judicial court of Massachusetts found in *Levi* v. *Railway Co.*, 193 Mass. 116 (78 N. E. 853):

" 'It is not every case of a permanent obstruction in the use of an easement that entitles the aggrieved party to a restoration of the former situation. Each case depends on its own circumstances. It is for the court, in the exercise of a sound discretion, to determine in such instances whether a mandatory injunction shall issue. It will not be issued when it appears that it will operate inequitably or oppressively, nor when it appears that there has been unreasonable delay by the party seeking it in the enforcement of his rights, nor when the injury complained of is not serious or substantial, and may be readily compensated in damages, while to restore things as they were before the acts complained of would subject the other party to great inconvenience and loss.' *Starkie* v. *Richmond*, 155 Mass. 188, 195, 196 (29 N. E. 770), citing 2 Story Eq. Jur. 959a; Kerr on Injunctions (1st Am. Ed.), 231; *Royal Bank of Liverpool* v. *Grand Junction Railroad Co.*, 125 Mass. 490; *Lewis* v. *Chapman*, 3 Beav. 133; *Gaskin* v. *Balls*, 13 Ch. D. 324; *Aynsley* v. *Glover*, L. R. 18 Eq. Cas. 544.

"No discussion is required to show that upon the

facts found by the master, this case is one which calls for the application of this principle. It is manifest that to restore things to the former situation would subject the defendant to great inconvenience and loss, and is inequitable, and that the decree ordered by the trial court sufficiently provides for the wants of the plaintiff as to the right of way. She should, however, have recompense for the damages in the past, and the bill may be retained to assess such damages. *Jackson* v. *Stevenson,* 156 Mass. 496 (31 N. E. 691)."

This principle has been recognized and acted upon in the following Michigan cases: *Blake* v. *Cornwell,* 65 Mich. 467; *Allen* v. *Thornapple Electric Co.,* 144 Mich. 370; *McKee* v. *City of Grand Rapids,* 137 Mich. 200; *Stock* v. *City of Hillsdale,* 155 Mich. 375.

In the *McKee Case* a riparian owner sought to enjoin the pollution of a watercourse running through his property caused by sewage from the city. It appeared that this infringement of the plaintiff's rights had continued for a number of years, during which the city had constructed an expensive sewage system, which could not be used without extensive changes, if an injunction were issued prohibiting the defendant from polluting the water. This court said:

"As against the city the complainants are not now entitled to the gracious writ of injunction to compel the city to undo what it has done. The purchase of the island, the intention to connect it with the mainland and to close up the sluiceway, and the progress of all these important and extensive improvements were known to the complainants. They contented themselves with a mere protest at some stage of the proceedings. Two courses were then open to them: (1) To file a bill in equity to enjoin the work on the ground that it would increase the nuisance already existing, and cause them irreparable damages; (2) to wait until the work was done, and bring an action at law for damages. They waited. Equity will not now lend its aid to a party to compel an expensive work to be undone, which the party might, by planting a bill in equity in reasonable season, have prevented.

(Citing many cases.) A mere protest, under such circumstances will not open the door of equity to parties who thus delay in seeking its aid. (Citing authorities.) When these complainants chose to content themselves with the simple protest, and then to stand by in silence, and see these extensive and valuable improvements progress, they estopped themselves to any remedy by injunction."

In the *Blake Case* and in the *Allen Case,* the evidence having warranted it, this court fixed the compensation for "past and future damages" to be paid to complainants.

In the *Stock Case* it was held that although the plaintiff was not entitled to an injunction, the court having obtained jurisdiction would retain it, and award plaintiff his damages in gross. The decree was modified and the case remanded, with the privilege of taking testimony upon the distinct question of damages in gross. That course will be followed here. The decree below will be modified to the extent that an injunction will be denied, and the case remanded to the circuit court, in chancery, to take testimony upon the distinct question of the "past and future damages," or damages in gross, sustained by the plaintiff by reason of the closing of the crossing at Court street; and for this amount as determined by the court below, a decree will be entered by that court for the plaintiff, with costs.

As so modified, the decree below will be affirmed, with costs to plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.