## Alfred Warren and others v. The City of Grand Haven and others.

*Streets : Dedication : Public uses : Sewers : Damages : Waiver.* The dedication of land for the purpose of a village or city street is to be understood as made and accepted with the expectation that it may be required for other public purposes than those of passage and travel merely, and that under the direction and control of the public authorities it is subject to be appropriated to all the uses to which such streets are usually devoted as the wants or convenience of the people may render necessary or important; and one of these uses is the construction of sewers under them. The custom of laying sewers under such streets must be assumed to be had in view when such a way is dedicated ; and the act of dedication is a waiver of any claim by the owner to compensation for damages on account of such a use of the street by the public.

*Sewers : Draining low lands : Taxing district : Charter of Grand Haven.* The provisions of the city charter of Grand Haven as to the authority of the common council for sanitary purposes to open ditches and drain swamps, marshes

WARREN *v.* GRAND HAVEN.

and other low lands, and as to fixing the taxing district for the expense of such improvements, are not applicable to the case of sewers; the necessity for the construction of sewers stands upon different considerations from those which pertain to the drainage of the natural surface; and it is competent for the council to designate a special local taxing district for the construction of a sewer on the basis of the increase in value of premises benefited.

*Sewer tax: Apportionment: Assessors: Administrative functions: Common council.* The apportionment of the tax among individuals or between lots with reference to benefits may lawfully, under said charter, be devolved upon one or more assessors chosen by the council; such a duty, requiring for its proper performance an examination of the several premises in detail, and involving merely administrative functions, does not properly belong to the council.

*Assessment roll: Assessor's certificate: Levying taxes.* Under a resolution of the council directing a tax for the construction of a sewer to be assessed against the owners or occupants of the premises the value of which is increased by the improvement, in pursuance of an ordinance requiring the assessment to be in proportion to benefits, a recital in the assessor's certificate, merely that he has made the assessment roll "pursuant to the resolution," is insufficient; such a certificate is ambiguous, and does not necessarily import any thing more than that he has made an assessment as by the resolution he was directed, or in obedience to its command, and is not equivalent to a distinct statement that he has levied the tax upon the basis established by the ordinance.

*Assessor's certificate: Certainty: Jurisdictional document: Special assessments.* An assessor's certificate of the levying of such an assessment, being a jurisdictional document in proceedings under which titles may be divested, cannot be permitted to speak in doubtful terms; and the reasons requiring such a certificate to be definite and distinct are more imperative in the case of special and exceptional taxes than in the case of general taxes.

*Assessor's certificates: Ambiguity: Levying taxes: Frontage: Value.* And in a case where the certificate is thus ambiguous, the fact that the tax has been laid apparently without regard to the value or use of the property but strictly in proportion to the frontage on the street, raises a strong inference that the requirements of the ordinance have not been observed.

*Tax roll: Warrant: Collection fees.* An objection that the warrant attached to the tax roll permitted the collector to add two per cent. for his fees is held to without force; the cost of collection is a necessary part of the expense of a sewer, and may be either included in the original sum ordered to be levied, or, with perhaps equal propriety, added afterwards.

*Estoppel: Alderman: Tax roll: Acquiescence: Common council.* One against whom a portion of such tax was assessed, who was a member of the council at the time the proceedings for levying the same were taken, but who is not shown to have done any thing towards recognizing such tax roll as valid, or to have participated in any action upon it otherwise than to move that a certain day be assigned for hearing appeals upon objections to it, is not estopped thereby from taking exception to such assessment roll.

*Heard April 28.    Decided July 21.*

Appeal in Chancery from Ottawa Circuit.

*William A. Pratt,* for complainants.

*J. W. Champlin,* for defendants.

COOLEY, J.

This is a suit to restrain the collection of taxes assessed upon the real estate of complainants fronting on Washington street in the city of Grand Haven, to meet the expense ·of constructing a sewer in that street. By the city charter as amended in 1869 (*Sess. L., 1869, Vol. 3, p. 1411, § 14*), the common council were given authority to make such improvements, either by general tax or by tax "to be assessed against the owners or occupants of the premises the value of which is increased" thereby. The council chose the latter mode, and provided by general ordinance that whenever they should have directed by ordinance or resolution the expense of any local improvement to be assessed against the owners or occupants of premises the value of which is increased by the improvement, they should determine what premises are so increased in value, and thereupon the mayor should forthwith proceed to make an assessment on said premises according to the provisions of such ordinance or resolution, and that such assessment should be made in proportion to which such premises are improved by the improvement. The records of the council show that certain parties petitioned, February 29, 1872, for the construction of a sewer in Washington street, from Third street to Grand river; and that on April 11, 1872, the city surveyor presented an estimate of the expense of the same, amounting to $2,671.25. The council thereupon resolved that the contract for the construction of the sewer be let to the lowest responsible bidder after the publication of proposals, and that a special tax of $2,671.25 be raised for the purpose of constructing the same; also, "that said tax be assessed against the owners or occupants of the premises the value of which is increased by said improvement, and that the following described premises are hereby determined to be the premises the value of which is increased by such improvement, that is to say: lots 11," etc. (describing a number of lots), "of the village, now city of Grand Haven,

according to the recorded plat thereof." Also, "that. the mayor be and he is hereby instructed to proceed forthwith to make an assessment and tax roll in accordance with the provisions of the preceding resolution, and the ordinance in such case made and provided. And that the warrant affixed to said assessment or tax roll shall direct the treasurer to collect the same within thirty days from the date of such warrant."

Acting under these resolutions the mayor proceeded to make out an assessment roll, which he, returned to the council with the following certificate attached:

"STATE OF MICHIGAN, } ss.
   *County of Ottawa,* }

"I hereby certify that the foregoing is the assessment roll for the Washington street sewer tax, made pursuant to a resolution of the common council of the city of Grand Haven, in said county, on the eleventh day of April, 1872, providing for the laying of a sewer in Washington street, from Third street to Grand river in said city, and to which I subscribe my name, this first day of May, A. D..1872.

"(Signed)                         GEO. E. HUBBARD,
              *" Mayor of the city of Grand Haven."*

By this assessment roll a uniform tax of one dollar nine cents per foot front on Washington street was levied on all the lots enumerated in the resolutions of the council, each of said lots being bounded on Washington street; either in front or at one of its sides. The roll was submitted to the council May 2, and on motion of Alderman Clubb, May 23 was fixed for hearing appeals therefrom. On the day last named the hearing of appeals was postponed for one week, and on May 30 the roll was confirmed, Alderman Clubb being absent. And thereupon a warrant was issued to the city treasurer for the collection of the tax, with two per centum additional for collection fees. The complainants, who own in severalty a number of the lots taxed, then filed their bill to enjoin the collection, and this being dismissed at the hearing, a part of the complainants appeal.

The first objection to the tax which we shall notice is, that the council had no right to cause a sewer to be constructed in this street without first taking proceedings to appropriate the land for the purpose under the right of eminent domain. This objection was based upon evidence put into the case to show that the street never was regularly platted, and only became a street by acts *in pais* constituting a dedication; and the argument is that the property in the soil belongs to the adjacent owners, subject to an easement for the purposes of travel only, and consequently could not lawfully be taken for a sewer without the consent of the owners, unless after compensation assessed and paid or secured. If we should concede the title to be in the adjacent owners, we cannot agree that the conclusion insisted upon would follow. The dedication of land to the purposes of a village or city street must be understood as made and accepted with the expectation that it may be required for other public purposes than those of passage and travel merely, and that under the direction and control of the public authorities it is subject to be appropriated to all the uses to which village and city streets are usually devoted, as the wants or convenience of the people may render necessary or important.—*Kelsey v. King, 32 Barb., 410; West v. Bancroft, 32 Vt., 367; Dillon Mun. Corp.*, §§ 544, 545. One of these uses is the construction of sewers, which are usually laid under the public streets; and the custom to lay them there must be assumed to be had in view when a way is dedicated, and the act of dedication is a waiver of any claim to compensation the owners might otherwise have made, had a sewer been laid across their premises.

It is also insisted that the tax should have been levied either upon the whole city, or upon a district within which the inhabitants would be benefited thereby as regards health. The argument on this branch of the case assumes that those provisions of the charter which, for sanitary reasons, confer authority upon the council to cause ditches to be opened, and swamps, marshes and other low lands to be drained,

are applicable to the case. But the provisions in the char-
ter for the draining of the natural surface have nothing to
do with the case of sewers.   Sewers are required for a dif-
ferent purpose altogether, and are usually constructed with
little regard to the natural condition of the land, and for
the purpose of carrying off, not the natural fall of water,
so much as the offensive material the accumulation of
which is a necessary result of a dense population, and which,
if not removed, would be a cause of discomfort and disease.
In the construction of sewers considerations of convenience
to the inhabitants of the particular locality are involved
quite as much as those of health ; and it would doubtless
be competent for the proper authorities to order a sewer
opened without taking into the account at all the improvement
of the natural surface or the protection of health.   And
whether or not it would be wiser or more just that the
burden should be borne by the city at large, rather than by
the particular district thereof in which the sewer is laid, is
a question which must be determined by the proper legis-
lative authority, which, in our opinion, would have an
undoubted right to designate a special taxing district for
the purpose, as was done here.

A further objection to the proceedings is, that if a spe-
cial taxing district is set apart for such a purpose, the appor-
tionment of the tax throughout this district must be made
by the council itself, and cannot be made by an assessor on
any arbitrary basis, as the complainants insist was done
here.   But we find nothing in the statute from which the
purpose is discoverable that the apportionment of the tax
among individuals or between lots with reference to bene-
fits, was to be devolved upon the council.   Such an appor-
tionment requires for its proper performance an examination
of the several premises in detail ; and as it involves merely
administrative functions, it could not properly be made by
a numerous body chosen to be the legislative council of a
city.   To designate one or more assessors for such a duty,
is the natural and customary proceeding, and it was very
properly provided by the council for these cases.

But we are reluctantly forced to the conclusion that the assessment which was questioned in this case was ineffectual, for the reason that the certificate of the mayor who made it does not show that it was made upon the lots taxed in proportion to the benefits they would respectively receive from the sewer.    The mayor merely says in his certificate that he has made the assessment roll pursuant to the resolution of the council.    Now, although the resolution directs the tax to be assessed against "the owners or occupants of the premises the value of which is improved by the improvement," and "in pursuance of the ordinance in such case made and provided," and the ordinance requires the assessment to be in proportion to benefits, yet we cannot regard the mayor's certificate as equivalent to a distinct statement that he has levied the tax upon the basis established by the ordinance.    When he says he has made the assessment "pursuant" to the resolution of the council, the word implies no more than that he has made it as directed by the resolution, or in obedience to its command; that is, he has made an assessment as commanded, but he is silent regarding the method adopted in reaching his results.    If he meant to be understood that he had made his assessment upon the principles laid down in the ordinance, which was referred to but not set forth in the resolution, he should have said so distinctly, instead of leaving it to so indirect an inference.    His language, to say the least, is ambiguous.    The roll was to be the authority under which titles might be divested, and it could not be permitted that a jurisdictional document of this nature should speak in doubtful terms.    It has been usual in this state to make positive provision that assessor's certificates under the general laws shall show expressly by their recitals that the assessment has been made on the basis which the statute has laid down.—See, for example, *R. S., 1838, p. 82*, § *11* ;   *R. S., 1846, p. 105*, § *21* ;   *Comp. L., 1857, p. 295*, § *25* ;   *Comp. L., 1871, p. 368*, § *25*.   And this requirement is mandatory.—*Clark v. Crane, 5 Mich., 151.*   The

reasons requiring the assessor's certificate to show the manner in which he has performed his duty are much more imperative in the case of these special and exceptional taxes than they are in other cases, because the general taxes are always apportioned according or with reference to market values, which afford standards possessing some elements of certainty, while the differences of opinion regarding the proper basis on which these local assessments should be levied, and the difficulty in determining from the result in any particular case, that the legal standard has been adopted, are quite likely to tempt assessors to make them according to their own notions of what ought to be the rule, unless they are restrained by some positive necessity of stating under their official oaths the grounds of their action in charging any particular lot or person with a specified amount, and of thus showing affirmatively that the law has been complied with. And the general rule which demands strict adherence to the requirements of the law in these *ex parte* proceedings would render it imperative that the certificate should contain the proper recitals, showing that the statute had been complied with, whether the statute or the ordinance in terms so declared or not. In the absence of such recitals we cannot know that the assessor has not proceeded according to some standard which he has prescribed for himself irrespective of the law. Indeed, in a case where such a tax has been laid apparently without regard to the value or use of the property, and strictly in proportion to the frontage on the street, a strong inference arises that the requirements of the ordinance have not been observed, since it can scarcely be possible that the improvement in value has been in this exact proportion; and though this inference is not conclusive, it is certainly an important circumstance tending to show how unsafe it would be to suffer the assessment roll to be verified by a certificate so naked in its recitals.

This is the only defect we have discovered in these proceedings. The objection taken to the warrant attached

to the tax roll, that it permitted the collector to add two per cent. for his fees, seems to us to be without force. This was a special tax to cover the expense of a sewer. The cost of collection was a necessary part of this expense, and might either have been included in the original sum ordered to be levied, or, with perhaps equal propriety, added afterwards, as was done here.

The conclusion we reach is, that the decree must be reversed, and a decree entered here in accordance with the prayer of the bill, as to all the complainants who have appealed. On the part of the defendants it has been urged that Henry S. Clubb, one of these complainants, is entitled to no relief, because he was a member of the common council when the proceedings took place, and participated therein. But there was nothing in any of the proceedings to estop any one from taking exception to the assessment roll, unless in some manner he has recognized that roll as valid, and taken action upon it. It was not shown that Mr. Clubb did this. On his motion a day was assigned for hearing appeals,—that is to say, for making objections to the assessment,—but this, certainly, was not acquiescence in it. Had he appeared and voted for confirming the assessment, it might have been different.

CHRISTIANCY and CAMPBELL, JJ., concurred.

GRAVES, CH. J., did not sit in this case.