Isaac Coleman v. The Flint & Pere Marquette Railroad Company.

*Highways—Discontinuance by non-user—Adverse possession—Width of highway by user.*

A highway can be partially discontinued by *non-user*, and stands, as against long (adverse) possession, no better than any other property; and a highway by *user* only is measured, as to its width, by such use.

So *held*, where a highway through plaintiff's farm was less than *four* rods wide as *used*, the remainder of the land within that *limit* having never been *opened* to the public, but fenced and cultivated by the land-owner for thirty years as his *private* property.

*Held*, further, that such facts were sufficient to rebut any presumption of donation or dedication of such unopened land to the public, and *conclusive* evidence of an intention to restrict the road to the traveled strip outside of the land-owner's fences.

*Held*, further, that How. Stat. § 1315, fixing the *width* of highways by *user* at *four* rods, cannot change such *vested* rights.

Error to Monroe.  (Joslin, J.)   Argued October 29, 1886.
Decided January 13, 1887.

Case.   Defendant brings error.   Affirmed.   The facts are
stated in the opinion.

*William L. Webber*, for appellant.

*John Davis* and *E. Willard*, for plaintiff.

MORSE, J.   The plaintiff sues for the value of a horse
killed by the cars upon the track of defendant.   The action
was brought in justice's court, and appealed therefrom to the
circuit, where, upon a trial before the court, without a jury,
the plaintiff recovered.

The horse escaped upon the track from the premises of
plaintiff through a defective fence.   The plaintiff claims it
was the duty of the defendant to erect and maintain this
fence, which the defendant denies.

This is the sole point to be determined.

From the findings of fact by the circuit judge, Hon.
Chauncey Joslin, it appears that the plaintiff keeps and cul-
tivates a farm in the township of Frenchtown, in Monroe
county, through which the defendant's railroad track and
right of way extend.   On the aforesaid premises of the plaint-
iff the track of the defendant's road crosses a highway; it does
not cross at right angles, but diagonally.

When the defendant fenced the track it acted upon the
assumption that the highway was four rods in width, and on
each side of the highway built fences along a line two rods
distant from the center line of said highway, as surveyed, to
the cattle-guards upon the track.   The highway as used,
however, was not four rods wide, and the plaintiff's road
fence was only fifteen feet and two inches from the center of
the highway, as traveled and surveyed.   This left a jog or
break between the highway fence, as built by the defendant,

64 MICH.—11.

and the road fence of the plaintiff, of 25.5 feet. The plaintiff built a pole fence extending from the corner of his fence across this distance to the fence of the railroad company. The defendant assumed that it was no part of its duty, under the law, to maintain a fence across this space, and the plaintiff therefore kept it up until the killing of the horse. The horse escaped through this pole fence, and was killed on the track between the cattle-guards.

The highway in question was laid out in 1832, by two commissioners of Frenchtown; but the records as found in the town clerk's office are defective, and show no jurisdiction obtained by said commissioners. But the highway has been used and traveled for over 40. years. The center line appears by such records to have been surveyed, which survey is now on file in the clerk's office. This center line was used as the guide of the defendant in erecting its highway fence.

Where the railroad crosses the highway is a turnpike, which is built almost exactly upon the center line of the highway, as surveyed in 1832. The highway is not four rods wide anywhere between fences along its whole route. The land of the plaintiff has been fenced to the highway, as it was at the time of the killing of the horse, for a period of 30 years or more, and the pole fence was built by the plaintiff about 15 years ago.

The defendant contends that under the statute law of this State all public roads have been required to be four rods wide since 1827 to the present time, excepting about one year, from 1857 to 1858; that this law applies to highways that have become such by user, as well as to those regularly laid out under the statute; and that the road fence of the plaintiff must be considered as an encroachment upon the highway, and that he could not acquire the land, within the four-rod limit of the highway, by user, as against the public.

The plaintiff claims that the highway was not regularly laid out, and is a public road by user only; and that it ex-

ists as such highway just so far as it has been used, and can extend no further than the user.

It makes but little difference, practically, as regards the rights of the contending parties, whether the highway in question was regularly laid out under the statute or acquired by user.

If regularly laid out in the first instance, it appears very clearly from the finding of the circuit judge, who finds the facts as stated by a witness, S. M. Bartlett, that the land included within the plaintiff's fence has never been opened and worked as a highway; and the plaintiff by long occupation has acquired the title to such land as against the public. It has been settled in this State that a highway can be partially discontinued by *non-user*, and that it stands, as against long possession, no better than any other property. *Gregory v. Knight*, 50 Mich. 61, 64.[1]

On the other hand, if it is a highway by user only, it can extend no further than it has been used. *Wayne Co. v. Miller*, 31 Mich. 447, 449; *Pratt v. Lewis*, 39 Id. 7, 12; *McKay v. Doty*, 63 Id. 581.

We are referred by the counsel for defendant to section 1315 of Howell's Statutes, which provides as follows:

"All highways regularly established in pursuance of existing laws; all roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not; and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, —shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use shall be four rods in width; and, where they are situated on section or quarter-section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be two rods in width on each side of such lines."

—In support of the proposition that this highway if acquired by use must be four rods wide.

[1] See *Lyle v. Lesia, ante,* 16.

But the clause in the statute making such roads four rods wide was adopted in 1881, after the highway in question had become a public road by user.

It was held in *Bumpus v. Miller,* 4 Mich. 159–163, that a highway acquired by user under the provisions of the Constitution would be four rods in width, unless the dedication or donation implied by the user was expressly or impliedly restricted by the owner. In this case the fact that the road was never opened and worked by the authorities inside of the line of the plaintiff's fence, but outside of it; that the public use and travel have also been outside of such fence, the plaintiff for over 30 years cultivating and holding the premises as his private property, and subject to no easement of the public,—is sufficient to rebut any presumption of any donation or dedication of the same to the public, and conclusive evidence of an intention to restrict the road to the space outside of his fence.

The Legislature, in my opinion, in 1881, could not alter or change the vested rights of the plaintiff in the premises. It would be taking the land of the plaintiff, without compensation, for public use, and without his consent. *McKay v. Doty,* 63 Mich. 581.

The line of the highway must be considered to be the fence of the plaintiff. It was, therefore, and is the duty of the defendant under the law to erect and maintain a proper fence along the line of the pole fence through which the horse escaped.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.