EYDE BROTHERS DEVELOPMENT COMPANY v EATON
COUNTY DRAIN COMMISSIONER

Docket Nos. 77250, 77377. Argued May 7, 1986 (Calendar No. 6).
Decided December 29, 1986. Rehearing denied 428 Mich 1206.

Eyde Brothers Development Company brought an action in the
Eaton Circuit Court against the Eaton County Road Commis-
sion and the Eaton County Board of Road Commissioners,
seeking a declaration of the scope of its interest in the Mt.
Hope Highway easement west of Creyts Road in Delta Town-
ship, and a permanent injunction restraining the road commis-
sion from interfering with its ownership of the property. Eyde
brought a second action against the Eaton County Drain Com-
mission, Eaton County, and the Eaton County Board of Com-
missioners, seeking mandamus to compel the drain commis-
sioner to obtain a release of its rights in the Mt. Hope Highway
property before beginning construction of a sewer, and an order
restraining the drain commissioner from entering its property
to construct a sewer. Delta Township and Blue Cross and Blue
Shield of Michigan, which had entered into agreements with
the Eaton County Drain Commission and Delta Township for
the construction of the sewer, were permitted to intervene as
parties defendant in both actions. The cases were consolidated
in the circuit court. The court, Harvey W. Moes, J., held that,
while a thirty-three foot right of way existed on either side of
the center line, Eyde's lawn mowing activities within the right
of way on its properties effectively rebutted the presumption
that the entire right of way was public, and thus the right of
way for Eyde's properties extended only 14½ feet north of the
center line, and otherwise dismissed the plaintiff's suit. The
Court of Appeals, CYNAR, P.J., and WAHLS and FINCH, JJ.,
reversed, holding that an abutting owner owns the fee to the
middle of the highway and has the right to use the subsurface
for any purpose not detrimental to the highway easement, that
a highway easement is limited to the right to travel, that a

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges §§ 25 et seq., 157 et seq.,
192, 196, 258, 264.
See the annotations in the Index to Annotations under Adjoining
Landowners and Property; Easements.

subsurface use falls within a highway easement only when essential to make the highway easement effective, and that the subsurface use of constructing a sewer was not within the scope of the Mt. Hope Highway easement (Docket No. 77724). Blue Cross and Delta Township appeal.

In an opinion by Chief Justice WILLIAMS, joined by Justices BRICKLEY, BOYLE, RILEY, and ARCHER, the Supreme Court *held:*

The scope of an easement for a public highway dedicated by user includes not only the right to surface transportation, but also access to the subsurface for those uses, such as sewers, that are adopted by public agencies for the benefit of the public and are implemented through authorized agents. Where a proposed sewer is to be located within the subsurface of such a highway, the consent of the abutting fee owner is not necessary if a release of right of way is obtained by a majority vote of the governing body having jurisdiction over the highway. The construction of a sewer within an existing public easement does not entitle the fee owner to compensation through condemnation proceedings where it is shown there will be no additional servitude or permanent damage to the property. A fee owner's mowing of grass within a public highway easement is insufficient evidence of possession or control of the property to rebut the statutory presumption that the width of the easement is four rods.

1. Construction of a sewer within the subsurface of a highway easement is a proper and contemplated public use of the easement. While the owner of land abutting a highway dedicated by user retains title in fee simple to the center line of the highway, the public easement in such a highway is not limited to surface travel, but includes those uses, such as the installation of sewers, contemplated to be in the public interest and for the public benefit. The easement is in the public and cannot be limited by individual perceptions of what the scope of that easement should be.

2. Where a sewer will traverse or damage private property, the drain commissioner must secure from the owners either easements or releases of right of way and damages. Where a portion of a drain is to be located within a street or highway, the commissioner may alternatively secure a release by obtaining a majority vote resolution granting leave for the construction from the governing body having jurisdiction over the highway. Authority for the grant is derived from sections of the general highway law and the Drain Code read in pari materia. In this case, the proposed sewer is to be located within the subsurface of a highway dedicated by user and leave to con-

struct was granted by the governing bodies, obviating any necessity for obtaining a release from the fee owner of the abutting land.

3. Although the owner of land abutting a highway dedicated by user retains the fee in the property, the easement itself is in the public. Where a new use of an existing public easement adds to the public benefit and does not constitute an additional servitude upon the fee, the fee owner is not entitled to compensation.

4. The width of an easement of a highway dedicated by user is not confined to the paved surface, but includes the entire statutory presumption of four rods in width. To rebut the presumption, a fee owner must prove that the width of the easement was expressly or impliedly restricted or offer evidence of control or possession of the disputed property beyond ordinary maintenance. The plaintiff's lawn mowing activities on the disputed property in this case were insufficient to rebut the statutory presumption.

Reversed.

145 Mich App 269; 377 NW2d 857 (1985) reversed.

Justices LEVIN and CAVANAGH took no part in the decision of this case.

1. DRAINS — HIGHWAYS — DEDICATION BY USER — EASEMENTS.

The scope of an easement for a public highway dedicated by user includes not only the right to surface transportation, but also access to the subsurface for those uses, such as sewers, that are adopted by public agencies for the benefit of the public and are implemented through authorized agents.

2. DRAINS — HIGHWAYS — DEDICATION BY USER — RIGHTS OF WAY.

Where a proposed sewer is to be located within the subsurface of a public highway dedicated by user, the consent of the abutting fee owner is not necessary if a release of right of way is obtained by a majority vote of the governing body having jurisdiction over the highway (MCL 247.183, 280.73, 280.74, 280.321, 280.433; MSA 9.263, 11.1073, 11.1074, 11.1321, 11.1433).

3. DRAINS — HIGHWAYS — DEDICATION BY USER — COMPENSATION OF FEE OWNERS.

The construction of a sewer within an existing public highway dedicated by user does not entitle the fee owner to compensation through condemnation proceedings where it is shown there will be no additional servitude or permanent damage to the property.

4. Drains — Highways — Dedication by User — Width of Easement.

  The mowing of grass by the owner of land abutting a public highway dedicated by user is insufficient evidence of possession or control of the property to rebut the statutory presumption that the width of the easement is four rods (MCL 221.20; MSA 9.21).

*Reid, Reid, Perry, Lasky, Hollander & Chalmers, P.C.* (by *Joseph D. Reid* and *John R. Fifarek*), for the plaintiff.

*McKay, Murphy, Brenton & Spagnuolo, P.C.* (by *M. Dale McKay* and *Frederick J. Griffith,* of counsel), for defendant Delta Charter Township.

*Foster, Swift, Collins & Coey, P.C.* (by *Theodore W. Swift, William K. Fahey,* and *Stephen O. Schultz*), for defendant Blue Cross and Blue Shield of Michigan.

Amici Curiae:

*Donald Pailen,* Corporation Counsel, and *Kathleen Leavey-Kageff,* Assistant Corporation Counsel, for City of Detroit Water and Sewerage Department.

*Lawrence B. Lindemer, B. E. Hagen,* and *Mirce Nestorovski* for Consumers Power Company.

*H. Wayne Wells, Mary M. Waterstone,* and *Jonathan P. Macks* for Michigan Bell Telephone Company.

*Bauckham, Reed, Lang, Schaefer, Sparks & Rolfe, P.C.* (by *John H. Bauckham*), for Michigan Townships Association.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Quentin A. Ewert, Rodger T. Ederer, Harvey J.*

*Messing,* and *Thomas E. Maier*) for Telephone Association of Michigan.

WILLIAMS, C.J. This case arises from the failure of Blue Cross and Blue Shield of Michigan and the Eyde Brothers Development Company to work out an agreement that Blue Cross should use and pay for the use of a connector sewer or drain[1] on Eyde's property. Blue Cross claimed that the Eyde sewer was too small and too costly, and thereupon sought to construct a sewer under Mt. Hope Highway.

Eyde argues that Blue Cross' efforts to construct the sewer within the Mt. Hope Highway easement were illegal for four reasons: First, Eyde contends

[1] Presently the terms sewer and drain are almost interchangeable. Drains have been defined by statute since 1897. See 1897 PA 254. Initially, sewers were not part of this definition and were explicitly disavowed as drains by this Court in *Clinton v Spencer,* 250 Mich 135, 145; 229 NW 609 (1930). In 1929, the definition of drain was expanded to include "any sewer," see 1929 PA 318, and in 1958 was more explicitly defined to include "any sanitary or any combined sanitary and storm sewer." See 1958 PA 87. Thus, following the current definition of drain under § 3 of the Drain Code of 1956 and when the term is used in this opinion, the term "drain" shall include the term "sewer."

Section 3 of the Drain Code sets forth the following definition of a drain:

> The word "drain," whenever used in this act, shall include the main stream or trunk and all tributaries or branches of any creek or river, any watercourse or ditch, either open or closed, any covered drain, *any sanitary or any combined sanitary and storm sewer* or storm sewer or conduit composed of tile, brick, concrete, or other material, any structures or mechanical devices, that will properly purify the flow of such drains, any pumping equipment necessary to assist or relieve the flow of such drains, and any levee, dike, barrier, or a combination of any or all of same constructed, or proposed to be constructed, for the purpose of drainage or for the purification of the flow of such drains, but shall not include any dam and flowage rights used in connection therewith which is used for the generation of power by a public utility subject to regulation by the public service commission. [MCL 280.3; MSA 11.1003. Emphasis added.]

that the highway easement extends only to surface transportation because it is an easement by user and the abutting owner (Eyde) retains the title in fee simple to the center line of the highway; therefore, before a sewer may be constructed within the easement, the drain commissioner must secure a release of right of way from Eyde or pursue condemnation proceedings. Second, Eyde contends that the drain commissioner should have and did not secure from Eyde either an easement or release of right of way pursuant to §§ 321 and 73 of the Drain Code of 1956. Third, Eyde contends that when the drain commissioner did not obtain a release of right of way from Eyde, she should have and did not pursue condemnation proceedings under § 75 of the Drain Code. Fourth, Eyde contends that, for the two parcels for which it mowed the grass within the highway right of way, the width of the Mt. Hope Highway easement was less than the statutory four rods.

We disagree with all of Eyde's contentions and hold that when a highway is established by user: 1) the scope of the easement includes the right to build sewers within the highway, 2) the consent of the fee owner to construct a sewer within the highway easement is not necessary if the builder obtains a majority vote resolution granting leave to construct the sewer by the governing body having jurisdiction over the highway, 3) the property owner retaining the fee is not entitled to compensation by condemnation when a sewer is constructed within the public easement of the highway, and 4) a property owner's mowing of grass is insufficient evidence of control over a highway right of way to rebut the statutory presumption of four rods or sixty-six feet as the width of the public highway easement.

The Court of Appeals decision is reversed.

## I. FACTS

The plaintiff, Eyde, owns property on both sides of Mt. Hope Highway in the Charter Township of Delta in Eaton County, just west of Lansing. The defendant, Blue Cross, owns two hundred acres near the intersection of Mt. Hope Highway and Creyts Road. The Blue Cross property is north of Mt. Hope Highway and east of Creyts Road. The Eyde lots are located on both the north and south sides of Mt. Hope Highway and are west of Creyts Road. They are also between the nearest sanitary sewer interceptor to the west and the Blue Cross property to the east.

Two of the Eyde properties on the north side of Mt. Hope Highway are rental residences. The principal Eyde witness testified that Eyde had mowed the front lawns of these residences periodically since 1968. No fences or buildings were constructed on or within the contested thirty-three foot right of way north of the highway center line.

Neither party disputes that Mt. Hope Highway, originally a section line road, is a public highway. The evidence shows that on March 3, 1921, the Eaton County Board of Road Commissioners adopted a resolution accepting Mt. Hope Highway into the county road system. Since that time, the Eaton County Road Commission has exercised sole jurisdiction and control over the highway.

In 1983, Blue Cross completed construction of a multimillion dollar health care facility on its property near Mt. Hope Highway. The owner and primary tenant of the building is Health Central, Inc., a wholly owned subsidiary of Blue Cross. At the same time, Eyde constructed a small storm sewer line on its own property 750 feet north of and running parallel to Mt. Hope Highway, with the alleged understanding that this line would

service the Blue Cross facility and tie into the Delta Industrial Drain, the county drain. Whatever arrangement there was between Eyde and Blue Cross broke down in December, 1983, when Blue Cross described the capacity of the Eyde sewer as inadequate and the cost prohibitive. Consequently, with the building ready for occupancy, but without a sewer hookup, Blue Cross immediately applied for and obtained a "pump and haul" permit from the Department of Natural Resources to remove the sanitary sewage from the Health Central facility.

Still in need of a permanent link with the main sanitary sewer interceptor, on February 7, 1984, Blue Cross entered into a municipal utility agreement with the Eaton County Drain Commissioner for Blue Cross to contract for the construction of a storm sewer. Eyde did not learn of this February 7 agreement until March 23, 1984. On March 20, 1984, Blue Cross entered into a municipal utility agreement with Delta[2] for construction of the sanitary portion of the sewer.

On March 16, 1984, Eyde filed the first of two related lawsuits.[3] The first suit named as defendants the Eaton County Road Commission and the Board of County Road Commissioners of the County of Eaton. In this suit, Eyde requested a declaratory judgment to determine the scope of its interest in the disputed property and a permanent injunction restraining the road commissioner from interfering with Eyde's ownership of the disputed

[2] Eyde was aware that Blue Cross wanted to enter into a utility agreement with Delta. In the fall of 1983, Eyde had filed a lawsuit to enjoin Delta from executing such an agreement, but the case was eventually dismissed by stipulation of the parties.

[3] Eyde filed a third lawsuit in Ingham County requesting that the Water Resources Commission be enjoined from granting an extension of Blue Cross' "pump and haul" permit, but this suit is not at issue here.

property. On March 26, 1984, Eyde filed the second lawsuit, naming the Eaton County Drain Commissioner, the County of Eaton, and the Eaton County Board of Commissioners as defendants and requesting a writ of mandamus to compel the drain commissioner to carry out her statutory duties, viz., inter alia, to secure the necessary releases and an ex parte restraining order to keep the drain commissioner and her agents or assignees from entering on Eyde's property to construct the sewer.

Delta and Blue Cross moved to intervene in both lawsuits. On March 27, 1984, the trial judge consolidated the cases. The trial judge granted Eyde's request for injunctive relief, issuing a temporary restraining order halting all efforts to construct the sewer, and ordered the drain commissioner to show cause why a writ of mandamus should not follow. At the April 6 show cause hearing, the trial judge modified the temporary restraining order to not apply to ten and one-half feet of either side of the center line of Mt. Hope Highway. The trial judge's final judgment was to rule that a thirty-three foot right of way existed on either side of the Mt. Hope Highway center line except for two parcels on the north side of the highway, one with eighty feet of frontage on the highway and the other with 160 feet of frontage. The trial judge held that for these two Eyde properties, the right of way would extend only fourteen and one-half feet north of the center line, reasoning that Eyde's lawn mowing activities within the thirty-three foot right of way effectively rebutted the presumption that the entire right of way was public.

The circuit court issued its final order on April 12, 1984, limiting the public right of way on the two Eyde residential properties, but otherwise dismissing the Eyde lawsuit. Blue Cross immediately

began preparations to construct the sewer under Mt. Hope Highway. At the same time, Eyde prepared an application for leave to appeal to the Court of Appeals that was filed on April 18, 1984. On April 19, 1984, the actual construction on the sewers began, and on April 25, 1984, the Court of Appeals reinstated the circuit court's restraining order, halting all construction.

On August 22, 1985, the Court of Appeals reversed the trial court's decision and remanded the case for entry of a writ of mandamus compelling the Eaton County Drain Commissioner to prohibit construction of the sewer until Eyde authorized releases on its right of way or received compensation through condemnation proceedings. *Eyde Bros Development Co v Eaton Co Drain Comm'r,* 145 Mich App 269, 283-284; 377 NW2d 857 (1985). The Court of Appeals held that "an abutting owner owns the fee to the middle of the highway and has the right to use the subsurface for any purpose not detrimental to the highway easement," that "a highway easement is limited to the right to travel," and that "a subsurface use falls within a highway easement only when essential to make the highway easement effective." *Id.* at 279. Because the Court of Appeals determined that the proposed sewer system "will not benefit the highway use or the public's right to travel," it concluded that this subsurface use was not within the scope of the Mt. Hope Highway easement. *Id.*

Blue Cross and Delta Township filed applications for leave to appeal, and this Court granted leave on October 16, 1985.

We reverse the decision of the Court of Appeals and hold that the scope of an easement within a highway established by user includes the right to build sewers without the consent of or compensation to the fee owner, provided that a release of

right of way is first obtained by a majority vote resolution of the governing board having jurisdiction over the highway easement. We reinstate that portion of the trial court's decision that the width of the right of way on either side of the center line of Mt. Hope Highway is thirty-three feet. We reverse that portion of the trial court's decision that determined the width at the rights of way for the two Eyde rental properties abutting Mt. Hope Highway to the north to be fourteen and one-half feet.

## II. THE SCOPE OF AN EASEMENT ESTABLISHED BY USER

Eyde contends that because Mt. Hope Highway is a highway dedicated by user and not by statute,[4] the public's easement applies only to surface travel; therefore, Blue Cross cannot construct a

---

[4] It has long been recognized that a highway may be dedicated for public use by statute or by common law. See *People v Beaubien,* 2 Doug 256, 269-270, 271, 282 (1846). A common-law dedication may be established by acts in pais on the part of the fee owner that are independent of the statute, but that otherwise constitute a dedication. See *id.* at 270-271. See also *Alton v Meeuwenberg,* 108 Mich 629, 634; 66 NW 571 (1896). A highway is dedicated by user when the public uses the highway for a period of years without the objection of the fee owner. This Court has held that "to constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used, for 10 consecutive years, without interruption." *Id.* at 636. The statute governing when a highway becomes a public highway either by statutory dedication or by implied dedication by user is contained within § 20 of the general highway law. The relevant portion states:

All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. [MCL 221.20; MSA 9.21.]

Both parties agree that Mt. Hope Highway is a public highway dedicated by user.

sewer within the easement unless the drain commissioner obtains Eyde's consent under § 73 of the Drain Code of 1956 or compensates Eyde through condemnation proceedings under § 75 of the Drain Code.

While Eyde is correct in stating that it retains the title in fee simple to property up to the center line of a highway dedicated by user, see *Village of Grandville v Jenison,* 84 Mich 54, 65; 47 NW 600 (1890) ("[t]he effect of a dedication under the statute has been to vest the fee in the county, . . . at common law, the act of dedication created only an easement in the public"), Eyde is not correct in arguing that the scope of an easement dedicated by user is limited to surface travel. This precise issue appears to be one of first impression for this Court. In prior cases, either the law of the case did not stand on all fours with the issue or facts at bar, or the case was resolved on a collateral or unrelated issue. But these cases give us a basis to reason what a rule should be.

In 1949, this Court addressed the issue of a fee owner's suit to enjoin the City of Detroit from building a subsurface automobile garage within an easement in *Cleveland v Detroit,* 324 Mich 527; 37 NW2d 625 (1949). The trial court determined that the plaintiff retained the "title in fee simple to the center of Washington boulevard, abutting and adjoining her property 'subject to the easement of the public for its use as a public highway . . . .' " *Id.* at 530.

The *Cleveland* Court relied on two cases to conclude that this subsurface parking structure was a valid use of the highway easement. *Id.* at 537. That Court relied on *In re Widening of Fulton Street,* 248 Mich 13; 226 NW 690 (1929), to justify *parking* as an appropriate highway easement use —*Fulton* approved surface parking as an appropri-

ate highway use. To justify the *subsurface* use of the highway easement, the *Cleveland* Court relied on *Detroit City Ry v Mills*,[5] 85 Mich 634; 48 NW 1007 (1891), which found that "that type of use was approved . . . so far as 'heating, lighting, draining, sewerage, water, et cetera' are concerned." *Cleveland, supra* at 537 (quoting *Mills*).

While the subsurface use at issue in *Cleveland* was for a parking garage and not a sewer system, the reasoning is still applicable to the case at bar.

Prior to *Cleveland,* we held that a condition subsequent in a deed formally dedicating land for a highway was void as against public policy because it restricted uses "commonly adopted by public authority for the benefit of the people, such as sewer, water, gas, lighting, and telephone systems." *Grosse Pointe Shores v Ayres,* 254 Mich 58, 64; 235 NW 829 (1931). Although the *Ayres* case involved the examination of a condition in a deed, the public policy statement recognizing the importance of using highway easements for other than travel is persuasive argument for the case at bar. A highway easement is in the public and cannot be limited by individual perceptions of what the scope of that easement should be.

In 1874, Justice COOLEY stated that sewers are among the contemplated uses for public easements in dedicated streets in *Warren v Grand Haven,* 30 Mich 24 (1874):

> The dedication of land to the purposes of a village or city street must be understood as made and accepted with the expectation that it may be required for other public purposes than those of passage and travel merely, and that under the direction and control of the public authorities it is

[5] A more complete discussion of *Mills* is found below, *post,* pp 296-297.

subject to be appropriated to all the uses to which village and city streets are usually devoted, as the wants or convenience of the people may render necessary or important. One of these uses is the construction of sewers, which are usually laid under the public streets; and the custom to lay them there must be assumed to be had in view when a way is dedicated . . . . [*Id.* at 27-28. Citations omitted.]

*Warren* was decided on another issue,[6] thus the statement above is obiter dictum, yet it retains its value for its recognition, as in *Ayres,* of the importance of street easements for uses other than travel, and specifically, sewers.

Some years after *Warren* was decided, this Court in *Village of Manchester v Clarkson,* 195 Mich 354; 162 NW 115 (1917), addressed a village's right to construct a sewer along a public alley that had been dedicated by user. The abutting landowner retained the fee in the alley and refused to consent to the construction of the sewer. The precise issue was whether the trial judge invaded the province of the jury by deciding as a matter of law the factual issue of "whether the sewer followed a public alley established by user . . . ." *Id.* at 356. In discussing this issue, however, the Court stated: "That public alleys involve easements in the nature of ways for the installation of water pipes, sewers, and other urban services for the general welfare under municipal regulation is well settled." *Id.* at 360.

Thus, these cases uniformly state that highway easements have greater scope than Eyde contends. However, in none of these cases was the deciding issue the same as we have in the case at bar.

---

[6] The plaintiffs sued to restrain the collection of special taxes assessed for the construction of a sewer. The special assessment was held to be ineffective because of the mayor's error in its certification. *Warren, supra,* p 29.

The Court of Appeals has decided two cases that are similar to the instant case. In *Gunn v Delhi Twp,* 8 Mich App 278; 154 NW2d 598 (1967), the Court held, inter alia, that "in Michigan nonstatutory dedication of land for use as a public road or highway operates to transfer to public authorities and public utility companies the right to construct sewer lines thereunder, and thus there was no deprivation of property in the constitutional sense." *Id.* at 284. The plaintiff in *Gunn* owned land abutting a county road and sought to enjoin the township from constructing a sewer line within the road. As the fee owner, the plaintiff had claimed that the township could not construct the sewer without his permission, and that if the sewer line were not removed, the township must pay damages or condemn the property.

The second Court of Appeals decision on this issue was *Hull v Green Oak Twp,* 24 Mich App 309; 180 NW2d 204 (1970). The *Hull* Court concluded in a brief per curiam opinion that it was unnecessary for the township to compensate the abutting landowner through condemnation proceedings because the sewer "runs wholly in the public roadway." *Id.* at 311. In *Hull,* the defendant township filed a petition for condemnation to obtain an easement across the plaintiff's land for the purpose of constructing a sanitary sewer. The plaintiff received no notice of the proceedings and sued to declare them a nullity. The defendant prevailed on a motion for summary judgment, and the Court of Appeals affirmed, holding that the condemnation was unnecessary because the easement in question lay "wholly in and on a roadway maintained by the [county] and is and has been open to and used by the general public for an excess of 25 years." *Id.* at 310.

In *Cleveland,* expanding the scope of a public

highway easement to include subsurface parking garages was a natural consequence that answered a definite public need and generated a definite public benefit. The *Cleveland* Court adopted the reasoning that if parking places for automobiles are a natural outgrowth of hitching posts for horses, then parking within the subsurface is a natural outgrowth of the lack of parking on Washington Boulevard. Further, the *Cleveland* Court reasoned that if projects such as those for sewers, gas, lighting, and telephones are anticipated uses of subsurface public easements, then the subsurface could also be used for public parking. Thus, the *Cleveland* case is persuasive support for our holding that construction of a sewer within the subsurface of a highway easement is a proper and contemplated public use of the easement. And while the actual holdings in *Warren, Clarkson,* and *Ayres* are not on all fours with the issue in the case at bar, we find the quoted dicta to be persuasive. Further, we find accord in the Court of Appeals cases, *Gunn* and *Hull.* For these reasons, we hold that a public easement in a highway dedicated by user is not limited to surface travel, but includes those uses, such as the installation of sewers, contemplated to be in the public interest and for the public benefit.

### III. THE RELEASE OF RIGHT OF WAY

Eyde contends that before the Eaton County Drain Commissioner could authorize construction of the sewer, it should have secured from Eyde a release of right of way pursuant to §§ 321 and 73 of the Drain Code of 1956. Under § 321 of the Drain Code, drain commissioners are directed to

gain permits or releases of right of way for laying drains[7] within or across a highway right of way:

> Drains may be laid within or across the right of way of any highway, provided it shall be necessary for the county drain commissioner to obtain first a permit from the highway authority having jurisdiction. If title in fee simple be not in the highway authority, said commissioner shall also obtain a release of right of way for the purposes of such drain from the owner of the land, as provided in sections 73, 74 and 75 of this act. [MCL 280.321; MSA 11.1321.]

If Mt. Hope Highway had become a public highway by statutory dedication, the title in fee simple would be in the Eaton County Road Commissioner. Because the highway is a public highway by user, Eyde remains the fee owner. Therefore, under § 321 a release of right of way must be secured through §§ 73, 74, and 75 of the Drain Code.

Section 73 applies to those lands that are "to be traversed or damaged by the proposed drain":

> The commissioner shall secure from a professional engineer, plans, specifications and an estimate of cost of the proposed drain and descriptions of the lands or rights of way needed for the proposed drain. In approving the route of the drain as furnished by the engineers the commissioner shall not be limited to that described in the petition or in the first order of determination, if the new route is more efficient and serviceable. *The commissioner shall endeavor to secure from the owners of each parcel or tract of land to be traversed or damaged by the proposed drain or drains an easement or release of right of way and*

---

[7] Recall that the term "drain" as defined in § 3 of the Drain Code of 1956 encompasses the term "sewer," described as "sanitary or any combined sanitary and storm sewer." MCL 280.3; MSA 11.1003. See n 1.

*all damages on account thereof.* [MCL 280.73; MSA
11.1073. Emphasis added.]

The emphasized sentence deals with two distinct
actions. The first is to secure an easement, and the
second is to secure a release of right of way. In the
instant case, because there already is an easement
in the public, there is no need to acquire a new
easement for the construction of the sewer. As to
the second action, because the Blue Cross sewer
would traverse the subsurface of the Mt. Hope
Highway easement, the drain commissioner may
secure a release of right of way pursuant to § 74
which governs the methods for obtaining releases
of rights of way.

Under § 74, Eyde claims that the consent of the
fee owner is necessary for a release of right of way
when the proposed drain is to be constructed
*within* a highway. We disagree. When the existing
easement is, as in the instant case, "within any
street, highway or public place," § 74 gives the
drain commissioner an alternative method to ob-
taining a direct release from Eyde as the fee
owner. The statute states:

Commissioners may take acknowledgments of
releases of right of way and administer oaths in all
proceedings in any way pertaining to drains under
this act. A simple form of release of right of way
and damages that shall set forth by reference to
the survey of the drain, or by other convenient
description, the particular land to be conveyed and
signed and acknowledged by the person having the
right to convey, shall be deemed a sufficient con-
veyance under the provisions of this act. All re-
leases for rights of way shall be deemed to include
sufficient ground on each side of the center line of
such drain for the deposit of the excavations there-
from. It shall not be necessary for the wife to sign
the release of right of way unless she has an

interest in the land other than her inchoate right of dower. *Whenever a portion of a drain shall be located within any street, highway or public place, then a resolution adopted by a majority vote of the governing body having jurisdiction over such street, highway or public place granting leave to construct such drain therein, designating the place to be traversed by said drain, shall be a sufficient release of the right of way,* and shall be deemed a sufficient conveyance under this act, and said governing body may permit the construction of an open drain if such consent be set forth in such resolution. [MCL 280.74; MSA 11.1074. Emphasis added.]

The section consists of five sentences. The first four sentences apply generally to releases. The fifth and critical sentence to our analysis governs that specific instance when a drain is to be constructed within a highway. In the instant case, Blue Cross' proposed sewer is to be located within the subsurface of Mt. Hope Highway, and toward that end Blue Cross has executed two municipal utility agreements, one with the Eaton County Drain Commissioner and one with the Charter Township of Delta. In each agreement, Blue Cross is granted leave to construct a sewer. However, the Eaton County Drain Commissioner has specifically denied any jurisdiction over the drain until construction is complete, thus the necessary release of right of way "by . . . the governing body having jurisdiction over such . . . highway" did not originate from the drain commissioner. Delta appears to have accepted jurisdiction over the easement, for in paragraph 7 of Delta's March 20, 1984, municipal utility agreement with Blue Cross, Delta granted to Blue Cross the permission to construct the sewer within the public easement. The day before, on March 19, 1984, the Delta Township Board passed a resolution granting Blue

Cross leave to construct the Mt. Hope Highway sewer. Because the sewer is to be constructed *within* the highway, this resolution constituted a sufficient release of right of way under § 74 of the Drain Code. Thus, Eyde's consent to a release of right of way was not necessary.

Eyde claims that the Eaton County Drain Commissioner lacks authority to delegate the construction of the sewer to Blue Cross because Blue Cross is a "private developer" constructing a "private drain." However, § 433 of the Drain Code grants this authority to the drain commissioner. As the developer of the land, Blue Cross can construct its proposed sewer by entering into agreement with the drain commissioner. MCL 280.433; MSA 11.1433. The municipal utility agreement dated February 7, 1984, was such an agreement between Blue Cross and the Eaton County Drain Commissioner. The agreement obligates Blue Cross to construct the sewer "in accordance with plans and specifications prepared by or approved by the drain commissioner" and "to pay the cost of the drainage facilities including right of way, engineering, inspection, administration, and legal expenses incurred by the drain commissioner . . . ." MCL 280.433(1); MSA 11.1433(1). Before the drain commissioner signs the agreement, the developer must have its project certified by a registered professional engineer. MCL 280.433(2); MSA 11.1433(2). After construction, "[a]ll drain facilities and all rights of way, easements, or property in which the facilities are located, acquired, or constructed pursuant to the agreement to add lands shall be dedicated to public use or conveyed or transferred to the drainage district . . . ." MCL 280.433(3); MSA 11.1433(3). Thus, whether Blue Cross is a "private developer" constructing a "private drain" or a public utility constructing a pub-

lic drain is irrelevant. The final characterization is the same regardless of who the developer is and what kind of drain the developer is constructing because all projects are subject first to certification by licensed professional engineers and thereafter dedicated to public use or conveyed to the drainage district.

Eyde raises an additional argument questioning Blue Cross' authorization to construct a sewer within the Mt. Hope Highway easement. It is Eyde's claim that the Drain Code is the exclusive authority for the location and construction of drains, and thus § 13 of the general highway law, MCL 247.183; MSA 9.263, is irrelevant. While we agree that the critical issues in this case implicate the Drain Code, this does not diminish the importance of § 13, which authorizes municipalities, in this case, Delta Township, and public utilities to construct and maintain utilities, including sewers, on public highways, because without the authorization of the municipality the sewer could not be constructed within the highway easement under the general highway law. In fact, all the amici curiae briefs—representing four public utilities and the Michigan Townships Association—cite § 13 as the authority for municipalities and public utilities to enter upon public highways to construct utilities within public highway easements.

Parenthetically, Eyde claims support for its argument that the Drain Code exclusively governs the location and construction of drains from the Court of Appeals decisions in *Gunn v Delhi Twp* and *Hull v Green Oak Twp, supra.* In *Gunn* and *Hull,* unlike the instant case, neither the county nor the county drain commissioner was a party litigant, and thus the provisions of the Drain Code were never addressed. From this, Eyde reasons that the township could not have authorized the

construction of the sewer under § 13 without first obtaining Eyde's consent under §§ 321 and 74. We will not speculate on how the Court of Appeals would have decided *Gunn* or *Hull* had the drain commissioner been a party in either case. We do find the reasoning in both cases relative to § 13 to be sound.[8]

Returning to our analysis of § 13, while the Eaton County Drain Commissioner is a major party in this case, Delta Township is also a party and did consent to the construction of the sewer. Even though a portion of Delta's authority derives from § 74 of the Drain Code as the "governing body having jurisdiction over such . . . highway," § 13 of the general highway law grants Delta authority as the "township through which said [sewer] lines . . . are to be constructed" and from which consent must be obtained. Therefore, because Delta is a party litigant and because the proposed sewer within the Mt. Hope Highway easement could not be constructed without Delta's consent, as required under both § 74 of the Drain Code and § 13 of the general highway law, we find that § 13 is relevant to the resolution of this case.

The question we must answer is what relationship does § 13 of the general highway law have to §§ 321, 73, 74, and 433 of the Drain Code of 1956. It is well-established that statutes having a common purpose must be construed in pari materia to give the fullest effect to each provision. *People v*

[8] In *Gunn, supra* at 284, the Court of Appeals specifically relied on § 13 to hold that the township had the authority to construct sewers within the easement of a highway established by user and without first obtaining the consent of the abutting landowner who retained the fee in the land. The plaintiff in *Gunn* contended that there was a distinction between city roads and county roads such that the township had no authority to construct a sewer in a county road established by user as opposed to a city street dedicated by statute. The *Gunn* Court dismissed any distinction and concluded that "any public road" in the first sentence of the statute meant *any public road.*

*Smith,* 423 Mich 427, 441; 378 NW2d 384 (1985). We must examine all the relevant provisions of the statutes with the goal of producing a consistent and harmonious result. *Williams v Secretary of State,* 338 Mich 202, 207; 60 NW2d 910 (1953). Thus both the relevant sections of the Drain Code of 1956 as discussed above and § 13 of the general highway law must be examined. Section 13 reads as follows:

> Telegraph, telephone, power, and other public utility companies, and cable television companies and municipalities are authorized to enter upon, construct and maintain telegraph, telephone or power lines, pipe lines, wires, cables, poles, conduits, sewers and like structures upon, over, across, or under any public road, bridge, street or public place and across or under any of the waters in this state, with all necessary erections and fixtures therefor. Every such telegraph, telephone, power, and other public utility company, cable television company and municipality, before any of the work of such construction and erection shall be commenced, shall first obtain the consent of the duly constituted authorities of the city, village, or township through or along which said lines and poles are to be constructed and erected. [MCL 247.183; MSA 9.263.]

Section 13 authorizes public utilities and municipalities to construct and maintain public utilities. Because sewers are not constructed under the auspices of a specific public utility, such as is the case for telephone and electric lines, private entities may construct sewers under § 13 if the appropriate sections under the Drain Code have been followed. In this case, those steps would have been: 1) a release of right of way by majority vote resolution of Delta Township pursuant to § 74 and 2) authorization to construct the sewer from the

Eaton County Drain Commissioner pursuant to § 433.[9]

We find that, when examined in pari materia, §§ 321, 73, 74, and 433 of the Drain Code of 1956 and § 13 of the general highway law operate to grant sufficient authority to the Eaton County Drain Commissioner and Delta Township to allow Blue Cross to construct a sewer within the Mt. Hope Highway easement without first securing a release of right of way from Eyde. This is possible under the Drain Code because, when a sewer is to be located within the public easement of a highway dedicated by user, § 74 allows a majority vote resolution by the governing body having jurisdiction over the easement to be a sufficient release of right of way and § 433 allows the drain commission to delegate its authority to construct a sewer to a private developer, obviating any necessity for a release of right of way directly from Eyde as the fee owner of the abutting land. Finally, this is possible under the general highway law because after the necessary consents and authorizations are obtained under §§ 74 and 433 of the Drain Code, § 13 provides that Delta must consent before construction of the sewer can begin.

### IV. RIGHT TO COMPENSATION

Eyde contends that if the drain commissioner does not obtain Eyde's consent for the construction of the sewer within the Mt. Hope Highway easement, it is due compensation under the condemnation proceedings of § 75 of the Drain Code of 1956.

[9] We find it significant that § 13 of the general highway law allows a township to consent to the construction of a sewer without the prior consent of the fee owner, and § 74 of the Drain Code states that an individual fee owner's consent is not required when a majority vote resolution of the governing body having jurisdiction, the township in the instant case, grants leave to construct a sewer.

The relevant question is whether Eyde is entitled to compensation for the new use of an already existing public easement in a highway established by user. We hold that it is not so entitled. The common-law rule addressing highway uses and when abutting landowners are entitled to compensation states:

> A street or highway may be used for all of the ordinary purposes of a street, including new uses demanded by new inventions and new wants, and not merely for the purposes for which the street was formerly used, and such new use of a street does not entitle adjoining owners to compensation, provided that the new use under consideration is for a necessary public purpose, regardless of the absence of a direct benefit to the owners from such use. [29A CJS, Eminent Domain, § 133, pp 520-521.]

More specifically, the rule pertaining to a subsurface use of a right of way is:

> While the legislature may provide for or withhold compensation to an abutting owner on authorizing the use by the public of space under a public way which the abutter also uses, the use of city streets below the surface, authorized, as for sewers, . . . does not constitute such an additional servitude as entitles abutting owners to compensation, if such use is for the public benefit . . . . [*Id.* at 530.]

Later case law has held that this second rule applies to rural highways as well. *Id.* Thus, when a new use of an existing public easement in a highway dedicated by user adds to the public benefit and does not constitute an additional servitude on the abutting fee owner, the fee owner is not entitled to compensation through condemnation proceedings.

This Court has addressed the issue of compensation for new uses of public easements within streets dedicated by statute. In the 1891 case of *Detroit City Ry v Mills, supra,* the Court examined the claim of property owners that the construction of an electric street-railway "in, along, and through Mack street" "impede[d] the use and enjoyment of their property" and "impose[d] an additional servitude upon the street" that was unlawful without the consent of the property owners or without condemnation proceedings. *Id.* at 643, 645. The applicable statute in *Mills* "provide[d] for the organization of companies . . . to construct and operate railways in and through the streets of any town or city, upon obtaining consent of the municipal authorities . . . ." *Id.* at 645. The *Mills* Court held:

> After [land for the use of streets and highways] has been condemned or dedicated, there is no such thing as damage to [the lot-owner's] reversionary interest, caused by any use which is a public one. Whatever may have been the ancient adjudications limiting the rights of the public in the streets to passage and repassage, and whatever may now be the rule with regard to highways in the country, with the growth of population in our cities have come increased needs for heating, lighting, draining, sewerage, water, etc., and with these has come also a corresponding extension of the public rights in the streets. Immense sewers and water mains may be dug, and the soil removed, culverts and drains constructed, without compensating the abutting owners. It may now be considered the well-settled rule that the streets of a city may be used for any purpose which is a necessary public one, and the abutting owner will not be entitled to a new compensation, in the absence of a statute giving it.
>
> So far, then, as these defendants are concerned, it is immaterial whether they or the city own the

fee in the street. Their rights are the same in either case. So long as they are unobstructed in the use and enjoyment of their property, having convenient ingress and egress, and the use of the street is an authorized and proper public use, they have no legal cause for complaint. [*Id.* at 653-654. Citations omitted.]

Sixty years later, the Court in *Cleveland v Detroit, supra,* quoted most of the same passages from *Mills,* and held:

We thus conclude that the use of the subsurface of Washington boulevard for parking . . . is a proper highway use and the abutting property owner is not entitled to any compensation for such use in the absence of the widening of Washington boulevard or other damages to plaintiff's property. [*Id.* at 537.]

We recognize that a landowner with property abutting a highway dedicated by user retains the fee in the property. However, the easement itself is in the public, and we find the statements in the *Mills* and *Cleveland* cases persuasive: When the new use of an existing public easement adds to the public benefit and does not constitute an additional servitude upon the fee owner, the fee owner is not entitled to compensation.

### V. WIDTH OF HIGHWAY EASEMENT

Eyde claims that for its two residential rental properties abutting Mt. Hope Highway, the mowing of grass within the highway right of way is a sufficient showing of possession and control to rebut the statutory presumption that the easement is four rods wide. We disagree. When highway easements are established by user, they are as wide as the extent of the user, and as § 20 of the

general highway law states, are presumed to be
four rods or sixty-six feet wide:

> All highways that are or that may become such
> by time and use, shall be 4 rods in width, and
> where they are situated on section or quarter
> section lines, such lines shall be the center of such
> roads, and the land belonging to such roads shall
> be 2 rods in width on each side of such lines. [MCL
> 221.20; MSA 9.21.]

This Court's opinion in the case of *Bumpus v
Miller,* 4 Mich 159, 164 (1856), is an early applica-
tion of the predecessor of § 20:

> The statute provides that public highways shall
> be four rods wide: . . . . Whether the highway is
> acquired by user only, or under the provisions of
> the constitution, it must be four rods in width. The
> dedication, or donation, when not expressly or
> impliedly restricted by the owner, is not confined
> to the mere track which is beaten by carriages and
> the feet of animals in passing along, but includes
> and carries with it the four rods in width, as
> provided by statute . . . .

Thus, in the instant case, the width of the ease-
ment is not confined to the paved surface, stipu-
lated to be twenty-one feet wide, but includes the
entire four rods or sixty-six feet. When the public
has continuously used a highway without the fee
owner's objection, the law presumes a dedication
of an easement in the public.

To rebut the statutory presumption of four rods
width, a fee owner must prove that the width of
the easement was "expressly or impliedly re-
stricted." *Bumpus, supra* at 164. Cases in which
the statutory presumption has been rebutted effec-
tively include those in which the abutting property
owner has continuously maintained some struc-

ture or activity tending to give notice of possession
or control of the disputed property. See *Eager v
State Hwy Comm'r,* 376 Mich 148; 136 NW2d 16
(1965) (private parking place); *Coleman v Flint &
Pere Marquette R Co,* 64 Mich 160; 31 NW 47
(1887) (fence and cultivated land); *Scheimer v
Price,* 65 Mich 638; 32 NW 873 (1887) (fence);
*Rigoni v Michigan Power Co,* 131 Mich App 336;
345 NW2d 918 (1984) (fence); *Laug v Ottawa Co
Road Comm'r,* 37 Mich App 757; 195 NW2d 336
(1972) (rock garden, irrigation system, garage). In
the instant case, Eyde has done nothing more than
the road commission would do—mow the grass
along the shoulder of the highway. For an abut-
ting landowner to rebut the statutory presumption
of four rods width in a highway established by
user, there must be evidence of control or posses-
sion of the disputed property beyond that of ordi-
nary maintenance. Thus we conclude that Eyde's
lawn mowing activities on its two residential
rental properties are insufficient evidence to rebut
the statutory presumption that the Mt. Hope
Highway easement is four rods wide.

### VI. CONCLUSION

In summary, we hold that for a public highway
dedicated by user: 1) the scope of the public ease-
ment includes not only the right to surface trans-
portation, but also access to the subsurface for
those uses, such as sewers, that are adopted by
public agencies for the benefit of the public and
are implemented through authorized agents, 2)
when a proposed sewer is to be located within the
subsurface of a public easement, the consent of the
abutting fee owner is not necessary if, pursuant to
§ 74 of the Drain Code, a release of right of way is
obtained by a majority vote of the governing body

having jurisdiction over the public highway easement, 3) the construction of a sewer within an existing public easement does not entitle the fee owner to compensation through condemnation proceedings when it is shown there will be no additional servitude or permanent damage to the fee owner's property, and 4) a fee owner's mowing of grass within a public easement is insufficient evidence of possession or control of the disputed property to rebut the statutory presumption that the width of the easement is four rods or sixty-six feet.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed in part and reversed in part.

BRICKLEY, BOYLE, RILEY, and ARCHER, JJ., concurred with WILLIAMS, C.J.

LEVIN and CAVANAGH, JJ., took no part in the decision of this case.